HARRIET WILLIAMS SIMONSON v. GEORGE F. MOSELEY.[1]

June 19, 1931.

No. 28,390.

*Wright & Wright,* for appellant.

*William M. Nash* and *Chester L. Nichols,* for respondent.

*Ira C. Oehler* and *Peterson & Oehler,* amici curiae, filed a brief in support of the contention of appellant.

DIBELL, J.

Action to have the plaintiff adjudged to be the owner of the property of which Charles F. Hemmenway died the owner. The defendant, George F. Moseley, is the administrator. There were findings for the plaintiff. The defendant appeals from an order denying his motion for a new trial.

The claim of the plaintiff is that under a promise by the deceased that she should have his property upon his death she performed services and cared for him; that she performed her part of the contract; that he died intestate; that he made no provision for her; and that she is entitled to a decree vesting in her the property of which he was owner at his death by way of specific performance or charging it with a trust.

One may contract with another to give him his property at his death; and in a proper case, if he fails to do so, an action in the nature of one for specific performance may be maintained and title to the property be vested in the promisee or charged with a trust in his favor. The law is stated in 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8789a, summarizing our holding as follows:

"A person may by contract bind himself to give his property to certain designated persons at his death, and specific performance thereof may be enforced. To warrant specific performance of an oral contract to give property by will, the contract must be reasonable and satisfactorily established, and must have been performed to such extent and in such manner that the beneficiary cannot be properly compensated in damages. Assuming a peculiar personal and domestic relation as a member of the family of the promisor, pursuant to the contract, and giving him the society and services incident to such relation, and of a kind and character, the value of which is not measurable in money, is sufficient to justify specific performance; but services not of such peculiar character, and for which reasonable compensation can be made in money, are not sufficient to justify such relief."

And again in 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10207, as follows:

"A person may obligate himself by contract to make his will in a particular way, or to give certain specific property to a particular person, so as to bind his estate. But courts will be strict in looking into the nature and circumstances of such contracts and require satisfactory evidence of their fairness and justice. The remedy for a breach of such a contract depends upon the facts of the particular case, and may be either at law for damages or in equity for specific performance, or in presenting a claim to the probate court. If the contract is an oral one to devise land, and is reasonably certain as to its subject-matter and stipulations, equity will decree specific performance if there has been a part performance sufficient to take the case out of the statute of frauds. If the consideration for the contract is labor and services which may be estimated, and their value liquidated in money, so as reasonably to make the promisee whole, specific performance will not be decreed. But if the consideration for the contract is that the promisee shall assume a peculiar and domestic relation to the promisor, and render him services of such a peculiar character that it is practically impossible to estimate their value by any pecuniary standard, specific

performance will be decreed. Specific performance must be sought in the district court and not in the probate court. * * *"

These excerpts indicate the trend of our holdings. The general statement of the law is not involved. Its application to specific facts often is difficult.

■ The decedent Hemmenway was married in 1904 and moved to St. Louis Park, Hennepin county, in 1921. His wife died on May 10, 1923. He died on April 21, 1928, at the age of 72. They had no children. He had two sisters, whom he had not seen for 20 years and with whom he did not communicate. The plaintiff is a niece of Mrs. Hemmenway. She was a favorite of both Mr. and Mrs. Hemmenway. She cared for Mrs. Hemmenway in her last illness.

The court finds that in 1923 or 1924 Hemmenway entered into an oral contract to the effect that in consideration of past services of a personal nature rendered to him and his deceased wife and in consideration of the continuance of such relationship and the giving of her companionship and society and assuming towards him the attitude of a daughter Hemmenway would leave the plaintiff his property at his death. She had given him care and attention before. From 1923 until his death she accompanied him on various trips or excursions in Wisconsin, Minnesota, South Dakota, and other places and took personal care of him. Apparently these trips were in his auto and probably at his expense. She lived a short distance from the home of the deceased. He kept house for himself a part of the time after his wife's death. For two years a family lived in his house and he boarded with them. He spent Sundays at the home of plaintiff's father, where she lived. On week days the plaintiff was a visitor, took him to places of amusement, for rides, spent a large amount of time in his home, and did much to comfort him with her companionship in his old age. She had access to his safety deposit box and had his confidence. He told others that she was to have his property upon his death. He said that she had lived up to her agreement and that he was going to live up to his.

The decedent's two sisters were his only heirs. The evidence sustains the view that he did not intend that they should have his property. One of the witnesses, testifying to his statement that the plaintiff was to have it all, gave this conversation:

Q. "Did Mr. Hemmenway ever speak to you about his sisters?

A. "No, I asked that question about his sisters. I asked him if he didn't have any relatives, and he said, 'Yes, I have two sisters.' 'Well,' I said, 'What about them?' He said, 'Oh, I haven't heard from them in ages. They don't care anything about me, and I don't care anything about them.'

Q. "Do you know where those sisters lived, or did he tell you?

A. "No, he said he didn't know.

Q. "Did he say anything about those sisters having a share in some estate?

A. "Yes, sir, he did.

Q. "What did he say about them?

A. "He said that they had gotten their shares and that their husbands squandered it, and he used his to a good advantage, and they weren't going to get any of his."

On the day prior to decedent's death he had the plaintiff pick out the paper for decorating his house. It may be inferred that it was intended that she would occupy it. He died suddenly and prior to his death was in good health. He had not required exacting care or attention.

The testimony is not conclusive for the plaintiff nor conclusive against her. The first complaint alleged that the contract was between the decedent and the plaintiff and her father and mother. It was amended at the trial when there came a fear that the father was not a competent witness. He filed with the probate court a claim for the board of the decedent. This might be thought inconsistent with his testimony for the plaintiff. The plaintiff performed the services of the character stated. We cannot disturb the finding of the trial court that the decedent promised to compensate her by leaving her his property at his death.

■ That the decedent agreed to compensate the plaintiff by giving her his property at his death is not enough to entitle her to what she asks. A finding that the plaintiff can be compensated in money is required by the record. Therefore she should not have relief in the nature of specific performance or by charging the property with a trust.

The plaintiff lived with her father. She worked full time in a clerical position in a local industry. She continued her work during all the years she cared for the deceased. She married in 1924, several years before the death of the decedent. She did not surrender her prospects in life for him. She never lived with him or he with her. She was not a member of the family. She did not perform peculiar personal or domestic services for him. He did not need them. She was kind to him and gave him her companionship. They were mutually companionable, and doubtless each enjoyed contact with the other. The estate inventoried something like $15,000 or $18,000, partly real estate and partly personal property. The plaintiff rendered services of no such value. Their value can be found. The proper amount is uncertain and may vary greatly between a permissible maximum and minimum; but from a practical standpoint it is ascertainable.

We do not foreclose the plaintiff from maintaining her full claim upon a new trial, that is, a claim for all the property of the decedent. If she procures evidence that will induce the trier of fact to find to the necessary degree of certainty the essential facts, she may have all the property and the heirs none; or, upon different evidence, she may get compensation which is uncertain of prediction and the heirs the rest. The evidence must be greatly different to allow the plaintiff all the property or its equivalent in value. It is unfortunate litigation, and necessarily it is uncertain and may be prolonged; but the law deals with the parties upon the principles stated.

We note that in the conclusions of law judgment is ordered directing the probate court to enter judgment naming the plaintiff as sole heir and vesting all decedent's property in her. This

is not proper. No complaint is made of it. The district court is not reviewing or supervising the probate court. This is not the theory of the case and cannot be. We note that the two heirs of the decedent are not made parties. A part of the estate is real property. No objection is made. We say nothing further of it.

Order reversed.