## ALFRED HAPPEL v. MILTON HAPPEL AND OTHERS.[1]

November 6, 1931.

No. 28,459.

[1]Reported in 238 N. W. 783.

378

Duxbury & Duxbury and *L. L. Roerkohl*, for appellant.
William E. Flynn and *Brown, Somsen & Sawyer*, for respondents.

OLSEN, J.

Plaintiff appeals from an order denying his motion for a new trial. Coupled with the motion for a new trial was a motion to amend and change the court's findings of fact and conclusions of law.

The action is one to have a tract of land consisting of nine lots in the village of Houston decreed to be owned by and the title and right to possession thereof vested in plaintiff. Plaintiff is a son of W. H. Happel, deceased, and defendants are his three brothers and their wives, two of the brothers being the executors of the father's estate. Plaintiff claims he is the owner of the property by reason of a verbal agreement made with his father several years before the father's death and full performance of the contract on his part. It is one of the rather numerous cases coming to this court where the plaintiff claims to be entitled to specific real property under an oral contract with the owner thereof, since deceased. In substance it is an action for specific performance of an oral contract to convey real estate. The contract was void under the statute of frauds.

The court found on the decisive issues as follows:

"5. That in the month of February, 1915, the plaintiff and his family, upon the invitation of decedent, moved into a dwelling house upon those certain premises in the county of Houston and state of Minnesota, described as follows, to-wit:

"Lots 17, 18, 19, 55, 56, 57, 58, 59 and 60 of Crookston's Addition to Houston.

"That decedent was then the owner of said dwelling house and premises. That at some time thereafter and before the month of March, 1916, the exact time being unknown to the court, the said decedent made an oral agreement with the plaintiff that if plaintiff would assist him in building a new house upon said premises and would continue to live there and permit decedent to share the new house with him as a member of his family for the rest of his life, that decedent would devise the said premises to said plaintiff.

"6. That plaintiff did assist decedent in erecting a new house on said premises, but that decedent bought and paid for all the building material, and paid for all skilled labor, employed in the erection of said house. That plaintiff at that time was without employment and without any home of his own. That the new dwelling house was a modern, convenient and comfortable structure, and a much better home than plaintiff would have been able to provide for himself and family. That after the erection of said house the plaintiff, his wife and children occupied the same, and decedent lived with them as a member of the family until the death of decedent in June, 1919, except that decedent during the last months of his life, of his own volition, lived with certain of the defendants. That during all these years plaintiff paid no rent for said premises. That during all said time decedent paid the taxes upon said premises, and provided all the fuel for the family and also contributed for their use a substantial amount of products from his farm and furthermore gave to them, at irregular intervals, various small sums of money, amounting in the aggregate to at least three hundred and fifty dollars. That decedent also provided the family with a sewing machine and an automobile, and several years later replaced said automobile with a new one. That decedent was at all times well treated by plaintiff and his family; and he in turn conducted himself in an agreeable manner and gave them no particular trouble or care. That he was an active, self-reliant man, and when illness overcame him it was his custom to go to a hospital for treatment and nursing. That the entire arrangement was highly beneficial to the plaintiff throughout said period of years without regard to the anticipated devise of said premises.

"7. That a denial of the specific performance of said oral agreement will result in no injury or loss to said plaintiff, aside from his failure to receive the anticipated land."

As conclusions of law the court found that the oral contract was void under the statute of frauds; that plaintiff was not entitled to any relief under the doctrine of part performance, and was not entitled to any relief in the action.

■ Plaintiff complains of the last sentence in paragraph 6 of the findings of fact as not sustained by the evidence. The court there found that the entire arrangement between plaintiff and his father was highly beneficial to the plaintiff throughout said period of years without regard to the anticipated devise of said premises.

The finding is amply sustained by the evidence. The father had theretofore purchased and owned the premises as his home. The son had no home for himself and his family and was out of work. At the suggestion or invitation of the father, the son and his family moved into the home with the father, and the father and the son and his family continued to occupy the home. The agreement between them, set out in the findings, was not entered into until about a year later. There was no change in the occupation of the premises or in the situation of the parties at or after the time the agreement was made. The evidence shows that the father provided a home for the son and his family rather than that the son provided a home for the father.

That the arrangement was as beneficial to the son as to the father is sufficiently shown. The improvements on the premises, in rebuilding the house and building a barn, were made and paid for by the father. All the son did was to contribute some of his labor in the operation, readily compensable in money, if not already fully compensated.

■ The companionship and family relation extended to the father is stressed as valuable and not compensable in money. The general equity rule is that the value of intimate companionship and personal care and attention, such as is common among members of a family living together, cannot be measured in money so as to be recoverable in an action at law. This court has perhaps gone as far as any of the courts in so holding. Colby v. Street, 146 Minn. 290, 178 N. W. 599; Morrow v. Porter, 161 Minn. 396, 202 N. W. 53; Olsen v. Dixon, 165 Minn. 124, 205 N. W. 955.

■ But the rule has its limitations, and its application depends on the facts in each particular case. It is generally applied in cases where a person incapacitated by old age, physical ills, or in-

firmities requires special care and companionship. The furnishing of board and washing in his own home to a near relative and permitting him to share in the family life, when he is in no way incapacitated and neither requires nor receives any special care or service, is not sufficient to make the rule applicable. Simonson v. Moseley, 183 Minn. 525, 237 N. W. 413.

Here the father was not ill or incapacitated. He was well and active and able to and did care for himself. He was ill once and then went to a hospital for treatment and care. When ill a second time for about a month before his death, he went to the home of another son and was there cared for until his death. There is evidence of some small personal services to him, but so slight as to be unimportant.

Some of the cases seem to overlook the reciprocal duties and family relations existing between a parent and child. Here the father was helpful, not a burden, in the home. As shown by the findings, he contributed materially to the upkeep and comfort of the home and the family. As shown by the evidence, he was fond of the two children and cared for them and contributed to their enjoyment and well-being. It is readily inferred that the father's companionship with the son and his family was as valuable to them as their companionship was to him.

■ The seventh paragraph of the findings of fact, in substance a conclusion, that a denial of specific performance will result in no loss or injury to plaintiff aside from his failure to receive the anticipated property, is sustained by the evidence and findings. What has already been said applies to this as well as to paragraph six of the findings.

■ The refusal of the court to find that the services rendered by plaintiff were such that they could not be compensated in money is assigned as error. As already indicated, the evidence did not compel such a finding. And, as hereinafter pointed out, we construe the decision to be based on the ground that the plaintiff had failed to show equities entitling him to relief.

■ This is a suit in equity. The basis for an action such as this is that the plaintiff has so changed his position, made improve-

ments or rendered services in reliance on the contract, that he cannot obtain adequate compensation therefor in an action at law, and that to deny him relief would cause him unjust and unreasonable injury and loss amounting to fraud.

In Brown v. Hoag, 35 Minn. 373, 377, 29 N. W. 135, the court, speaking by Justice Mitchell, said:

"As already remarked, the doctrine of part-performance rests on the ground of fraud. The underlying principle is that where one of the contracting parties has been induced or allowed to alter his situation on the faith of an oral agreement within the statute, to such an extent that it would be a fraud on part of the other party to set up its invalidity, equity will make the case an exception to the statute."

In Snow v. Snow, 98 Minn. 348, 108 N. W. 295, it is said that the part performance shown must be such that substantial injustice or fraud will result before equity will compel performance.

In Chapel v. Chapel, 132 Minn. 86, 89, 155 N. W. 1054, the court quotes with approval the paragraph above quoted from Brown v. Hoag, 35 Minn. 373, 29 N. W. 135.

Many other Minnesota decisions follow the rule stated in Brown v. Hoag and cite the case. The latest we have noted is Ritchie v. Jennings, 181 Minn. 458, 460, 233 N. W. 20, where the case is cited, and the court says:

"Our rule requires such part performance that it would be distinctly wrong and inequitable on the part of the defendant not to convey as he agreed to do."

Further citations are not necessary.

The fact that the plaintiff does not get what he was to receive under the void agreement is not sufficient loss or injury to constitute fraud. Thomas v. Rogers, 108 Minn. 132, 121 N. W. 630, 133 A. S. R. 421; Chapel v. Chapel, 132 Minn. 86, 155 N. W. 1054.

■ The court having found, on evidence sufficient to sustain such findings, that the plaintiff would suffer no injury or loss, aside from not receiving the property, in other words, that he had failed to show any equity, the decision of the court was correct.

As the findings of fact are sustained by the evidence and the conclusions of law sustained by the findings, other assignments of error for refusal of the court to make different findings and conclusions need not be more specifically referred to.

The motion for a new trial on the ground that the decision is not justified by the evidence was properly denied.

Order affirmed.

