## CHARLES A. ANDERSON AND OTHERS v. NORMAN R. ANDERSON AND OTHERS.[1]

May 1, 1936.

Nos. 30,786, 30,808.

[1]Reported in 266 N. W. 841.

*Jenswold, Jenswold & Dahle,* for appellant Norman R. Anderson.
*Leslie S. High,* for appellant Carrie Anderson.
*Courtney & Courtney* and *R. G. Lacy,* for plaintiffs-respondents.
*Victor C. Wangensteen,* for respondent Pauline Anderson Gudim.

HOLT, JUSTICE.

The defendant Norman R. Anderson as administrator of the estate of Mary Anderson, and also as an individual, appeals from an order denying a motion in the alternative for amended findings or a new trial. The defendant Carrie Anderson appeals from a like order.

The action is for specific performance of an alleged contract made between the deceased Mary Anderson and her nine children to leave her estate to the children in equal shares. On May 17, 1929, Ole Anderson, a resident of St. Louis county, the husband of Mary Anderson and the father of the children, died intestate, leaving real and personal property of the value of some $30,000. Part of the real property was the homestead, worth about $7,000. The widow

was appointed administratrix. On May 26 or June 2, 1929, the seven sons met with their mother at the home of the son Norman. The daughter Carrie remained in the home of the mother, next door, to care for a child, but knew that a meeting was being held. At this meeting it was agreed that the children should transfer their interest in the father's estate to the mother upon her promise that upon her death the children should share equally in her estate. Pursuant to this agreement each child, in June, 1929, conveyed his or her interest in the real estate of the father to the mother, and at about the same time transferred the personal property by bill of sale. They also gave to her, as administratrix of her husband's estate, receipts in full for their share in the inheritance. These were filed in the probate court, and the final decree of distribution therein was entered December 26, 1929.

The mother, Mary Anderson, died testate November 10, 1933, and her son Norman R. Anderson was, on May 19, 1934, appointed legal representative of her estate and has qualified. Mary Anderson did not will her estate in equal shares to her children; but by her will bequeathed to her daughter Pauline.$1,000 and devised to her daughter Carrie the homestead and to the son Norman certain part of the real estate, the residue to go to the seven sons and the daughter Carrie in equal shares, $1,000 advanced to the son William to be deducted from his share.

The trial court's findings of fact and conclusions of law are attacked by many assignments of error, all of which need not be dealt with. The main questions raised and which control the decision are: (1) Is there sufficient evidence of the character required to support the agreement found? (2) Is that agreement of such a nature that it may be enforced in equity, or is it one to be filed as a claim against the estate of Mary Anderson? (3) Error in excluding certain testimony. (4) Impropriety in the conclusions of law.

Plaintiffs' cause of action rests upon a parol contract. They concede, as appellants contend, that such a contract to be entitled to specific performance must be established by proof that is clear, positive, and convincing. These cases are cited from this court:

Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455; Kins v. Ginzky, 135 Minn. 327, 160 N. W. 868; Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696; Hinkle v. Berg, 156 Minn. 307, 194 N. W. 637; Smith v. Erlandson, 160 Minn. 168, 199 N. W. 927; Sheehan v. Nelson, 168 Minn. 426, 210 N. W. 284. We think the proof of the contract comes up to the requirements of the decisions cited. There was a meeting arranged. The mother and the seven sons attended. It is true the two daughters were not there to participate in the conference. But all nine ratified and approved the agreement, for all transferred their interest in the father's estate to the mother, by deed and bill of sale, and also receipted to her as administratrix of the estate for their distributive shares. It is unthinkable that the daughter Carrie, who knew of the meeting, but stayed at the mother's home to take care of a child, was not fully advised of the agreement before she executed the deed, bill of sale, and receipt. The other daughter, though not present, stands by the agreement. It was a natural one to make. It was in the nature of a family settlement. All the children had confidence in their mother, who was thoroughly familiar with the dairy business her husband had profitably carried on with her and the children's help, and the latter desired her to manage and control the same without interference during the rest of her life, in return for which she would leave it to them in equal shares. As against this it is argued that the children made an outright gift to the mother of their shares in the father's estate to use and dispose of as she saw fit, confident that she would return more than she received; for she took one-third of the estate absolutely, except the homestead, in which she had but a life estate. One incident at the meeting strongly refutes this contention. There was testimony, which the trial court could accept as true, that at the meeting, Norman, one of appellants, "stood up and said that he had borrowed $2,000 from the estate and that he was willing to have it deducted out of his share at the death of his mother." And there was also testimony that the mother said: "That if the boys would consent to sign over their shares of her husband's estate to her until death, she said she would give it over to them then. And they agreed to do that." "The mother said that she would take care of

it until she died and then she would divide it equally among her nine children." The wives of the married sons were at the meeting, and, since they were competent to testify as to conversations with Mary Anderson, the agreement insofar as expressed in words came from their testimony. Norman's wife was not in accord; but it was for the trial court to determine who was truthfully relating what was said. This agreement cannot be viewed as one which was made separately between each child and the mother. It was a mutual agreement to bind one and all. It is readily seen that it was a family settlement wherein each joined in consideration that every one of the ten concerned should be bound. The relation created between the mother and children may be regarded as a trust. The children transferred their interest in the father's estate to the mother, she to use the same in connection with her interest in the estate until her death, when the whole of what remained was to be shared equally by the children. It is argued that what transpired is as well reconcilable with a gift by each child of his or her share to the mother in reliance on her desire to treat them all fairly, or as intrusting their shares in their father's estate to use during her life, she being free to dispose of her share in her husband's estate as she wished. Counsel cite Hemping v. Hemping, 141 Iowa, 535, 120 N. W. 111, and Nash v. Harrington, 110 Kan. 636, 205 P. 354. A mere reading of each will show that no such certainty as to an agreement was to be there obtained as from the few words above quoted from the testimony in the instant case. We consider the agreement proved by clear, positive, and convincing evidence. There is nothing in In re Estate of Brill, 183 Wis. 282, 197 N. W. 802, cited by appellants, contrary to the conclusions here reached.

Is the agreement one enforceable in equity? It is contended that each child has a remedy by filing a claim against the mother's estate for the value of his or her interest in the father's estate that was transferred to the mother. This would ignore the mutuality of the contract as between the children as well as between the mother and the children, and proceeds on the theory that the contract was a separate engagement between the mother and each child, and a breach thereof could be redressed by a recovery at law for the value

of the interest in the father's estate transferred to the mother; hence this action for specific performance does not lie. The mother agreed to share, not the interest transferred to her by the children in the father's estate, but the estate she should leave, equally between the children. So it would not seem feasible for each child to file a claim in the probate court against the mother's estate. Counsel for plaintiffs as well as the trial court seem to be impressed with the fact that certain of the property of the mother's estate could be regarded as heirlooms by the children or as possessing certain sentimental value, as, for instance, the family Bible, the household goods, and the home in which they had been reared, and furnished a court of equity with sufficient ground for taking jurisdiction of the controversy. This seems of little force, for if the children cannot agree as to the division or partition of certain real or personal property left by their parents, to which sentimental value is attached, the court can not well parcel it out but must direct it to be sold and the proceeds distributed. However, it is well established now that the district court has jurisdiction of actions for specific performance of a contract to will real estate. That such contract embraces also personal property ought not to defeat relief. Under the contract, as found by the court, there had been full performance by the children. In such a case they are entitled to specific performance; their rights in the mother's estate attached as of her death, subject only to the payment of the debts and expenses of her last sickness, of funeral, and of administration. We think the subject is so fully treated in Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, 742, L. R. A. 1916D, 421, that no further authorities are needed to show that this action is one properly brought in the district court. The plaintiff there claimed that the Utheims had agreed to adopt her as their child and leave her their property. The plaintiff remained in the home and rendered services as a child until 20 years of age. While she so remained Mrs. Utheim died. Thereafter Mr. Utheim remarried and died testate, leaving his property to his second wife. His will was allowed and his estate distributed by the probate court in accordance with the will. There was no appeal from the decree. The plaintiff then began the action for specific perform-

ance. A demurrer was sustained to the complaint alleging the above facts. In affirming, this was said [131 Minn. 59]:

"Assuming that plaintiff, by virtue of the contract, possessed the same rights as a natural child, and no others, she is concluded by the judgment rendered by the probate court, and cannot enforce, in this action, the rights of a pretermitted child. But if the contract with the Utheims expressly provided, not only that plaintiff should be adopted by them but also that she should receive their property, or a child's share thereof, at their death, a different question is presented. Under such a contract, the rights of plaintiff would not depend upon the will, nor upon the laws of descent, but would be fixed and determined by the contract. Such rights attach to the property of the decedent by virtue of the express contract made by him in his lifetime; and create, or at least may create, a claim of title to the property adverse to the title thereto given by will or by the laws of descent. The determination and enforcement of such rights is ordinarily beyond the jurisdiction of the probate court; and they are unaffected by a decree of the probate court determining the devolution of the property of the decedent, at least unless they have been submitted to that court for determination."

Among the authorities cited is Mousseau v. Mousseau, 40 Minn. 236, 41 N. W. 977. The decision also calls attention to Kleeberg v. Schrader, 69 Minn. 136, 72 N. W. 59, and Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455, where contracts of this nature were established and enforced in probate proceedings, but observes that the claimants voluntarily presented their claims to the probate court and that only personal property in the hands of the representative of the estate was affected by the contract. There has been no final decree rendered in the probate of Mary Anderson's estate, and the district court has before it everyone interested in the estate, including the personal representative, the legatees, and devisees. That specific performance of an agreement, either written or oral, of the nature of the one here found to have been made may be decreed by the district court was held in Colby v. Street, 146 Minn. 290, 178 N. W. 599; Simonson v. Moseley, 183 Minn. 525, 237 N. W. 413;

Smithers v. Bell, 183 Minn. 608, 237 N. W. 420. In Simonson v. Moseley, it failed because the evidence did not sustain the finding that plaintiff could not be compensated for the services rendered. As intimated above, the agreement here declared upon was not one to will property for services rendered which could be compensated by filing a claim against the estate; but there had been a transfer of an interest in an estate consisting of both real and personal property as consideration for the promise. But, beyond this consideration, there was a mutuality in the agreement which makes it proper for specific performance. It is perfectly clear that each child entered the agreement and transferred his or her share to the mother so that the latter might divide what she left equally among the children. Had any one child refused to join it would not have been made. As stated, this agreement was in the nature of a family settlement of both the father's and the mother's estates. Courts of equity enforce family settlements. Adjudicated cases are those where, after controversy has arisen, settlements were had; but it would seem that where an agreement has been made with a view to forestall any controversy concerning the disposition of both of the estates of the parents among children, equity should be equally inclined to grant specific performance. And this appears to be the view of Lord Justice Turner in Williams v. Williams, L. R. 2 Ch. App. 294, from which this deduction is drawn in 2 Beach, Modern Eq. Jurisprudence, § 1003. "A family arrangement may be upheld though there were no rights in dispute at the time of making it." Specific performance of family agreements concerning estates was held maintainable in Chandler v. Pomeroy, 143 U. S. 318, 12 S. Ct. 410, 36 L. ed. 169; Fulton v. Smith, 27 Ga. 413; Cole v. Cole, 292 Ill. 154, 126 N. E. 752, 38 A. L. R. 719; Blount v. Wheeler, 199 Mass. 330, 85 N. E. 477, 17 L.R.A.(N.S.) 1036; Price v. Price, 133 N. C. 494, 45 S. E. 855, 859; Perkins v. Allen, 133 Wash. 455, 234 P. 25. In the last cited case the contract was oral. In the Price decision is this language from Bailey v. Wilson, 21 N. C. 182, 189 [133 N. C. 505]:

"The agreement was confessedly entered into for the purpose of quieting disputes between the children of the same father, in rela-

tion to the disposition of his property; it is apparently equal; it is not denied to be fair; and was deliberately assented to as a proper and just family arrangement. Such arrangements are upheld by considerations, affecting the interests of all parties, often far more weighty than any considerations simply pecuniary."

2 Beach, Modern Eq. Jurisprudence, § 1003, states:

"Fair compromises, especially between members of a family, are favorably looked upon by courts of equity, their object being to prevent or put an end to litigation and to preserve the peace and property of families."

It is claimed that plaintiffs are not entitled to specific performance under the decision of Whitman v. Dittman, 154 Minn. 346, 191 N. W. 821, and Happel v. Happel, 184 Minn. 377, 238 N. W. 783. In the Happel case the court held that there was no performance by the plaintiff that took the alleged agreement out of the statute of frauds. In the Whitman case judgment on the pleadings was ordered and sustained on the ground that there had been no such part performance as to take the verbal contract out of the statute of frauds, the mere payment of money or the rendition of services which could be readily estimated and liquidated being insufficient grounds upon which to grant specific performance. There is an exhaustive annotation of cases bearing upon the right to specific performance of contracts to will property in 69 A. L. R. p. 14. Appellants also claim error in that the court distributed the $2,000 Norman agreed should be deducted from his share in the mother's estate for the reason that this was adjudication upon an advancement, a matter within the exclusive jurisdiction of the probate court. 2 Mason Minn. St. 1927, §§ 8895-8898; McHugo v. Norton, 159 Minn. 90, 198 N. W. 141, are cited by appellants. It would not seem to matter whether the $2,000 was simply a loan or an advancement by the father to Norman. The proposition of Norman that this item enter into the family arrangement and be deducted from his share in the mother's estate justly made it a part for adjudication in this action for specific performance of the agreement the children and the mother entered mutually, and which the children fully performed.

Error is assigned upon the refusal of the court to permit the attorney of Mary Anderson, who drew her will, to answer a question put to him by counsel for appellants whether he had ever heard either of respondents make a claim that their mother had ever agreed to share her estate equally among her children. There is nothing in the record tending to show that any of respondents had any occasion to assert such a claim to the attorney.

There are some objections to the conclusions of law insofar as there is an assumption to direct the probate court. The objections are, perhaps, justifiable in that the district court has no authority to direct the probate court to proceed except on appeals from the probate court. But whatever may be improper in the conclusions of law in that respect may be remedied by motion before entry of judgment. No friction between the two courts is to be anticipated. The probate court will undoubtedly give heed to the final judgment of the district court herein.

There are other assignments of error, but we deem those above considered determinative of the appeal.

The orders are affirmed.

