ANNA DILL v. ELIZABETH KUCHARSKY.[1]

April 17, 1942.

No. 33,048.

[1]Reported in 3 N. W. (2d) 585.

*G. A. E. Finlayson,* for appellant.
*Thomas J. Joyce,* for respondent.

HILTON, JUSTICE.

By this action respondent sought and was successful in having cancelled a quitclaim deed executed by Henry Dezie, now deceased, to appellant, his sister, and in having the property impressed with a trust and a conveyance to respondent ordered. The basis for relief was an oral agreement made in 1927 between Dezie and respondent according to the terms of which respondent, in consideration of cancelling an existing indebtedness and in providing personal and domestic services so long as she was able, was to receive the property after Dezie's death.

The occasion for the agreement was the death of Dezie's wife, respondent's daughter, and the threatened return of Leonard Wellnitz, a nephew who had been living with them, to an orphanage. After the death of her daughter, respondent intended to return to St. Paul, where she lived prior to living with the Dezies in Duluth. However, unless Dezie made satisfactory arrangements for the care of the boy, the orphanage insisted that he be returned. Thereupon, the above agreement was made. The indebtedness which respondent claims to have cancelled arose from a loan of $1,000 made to the Dezies in 1921 and used by them as the down payment upon the residence property here in question.

Under the plan, respondent had complete charge of the household, performing all domestic and personal services, managing Dezie's financial affairs, even sharing in the expenses occasionally, caring for and supervising the boy, nursing Dezie when he was sick, and at all times preserving the closest of personal relations until 1937, when she returned to St. Paul. She assigns ill health and infirmity of age as her reason. Although she left personal

belongings behind, she never returned to Duluth until after Dezie's death in 1939.

Prior to respondent's departure in 1937, Dezie's relations with appellant were not warm, but thereafter they were very much improved, and in 1939, during his last illness, appellant exhibited tenderness and affection for her brother and performed useful services upon his behalf. Shortly before his death and while he was seriously ill, Dezie executed the deed which conveyed the house to appellant in recognition of her affection and service.

The assignments of error mainly attack the sufficiency of the evidence. The contention is that respondent's evidence of the existence and terms of the oral agreement does not satisfy the quality of proof required—"clear, positive, and convincing." Anderson v. Anderson, 197 Minn. 252, 254, 266 N. W. 841, 842; Jannetta v. Jannetta, 205 Minn. 266, 269, 285 N. W. 619. It is also contended that the value of the services rendered by respondent could have been ascertained with reasonable accuracy, and therefore it was improper to award specific performance. Chapel v. Chapel, 132 Minn. 86, 155 N. W. 1054; Olsen v. Dixon, 165 Minn. 124, 205 N. W. 955; Happel v. Happel, 184 Minn. 377, 238 N. W. 783.

We approve the disposition of this case made by the trial judge. Respondent's case rests upon a sound evidentiary and logical basis. Certainly there was sufficient occasion for the making of this agreement. When Dezie's wife died he was faced with the prospect of being alone. He had developed a great affection for Leonard, but could keep him only if successful in prevailing upon respondent to remain. Dezie's affection for respondent was practically that of a son for his mother. Almost always he referred to her as "Mother." Desiring to prevent a complete dissolution of his home, Dezie urged respondent to stay with him, partly to oversee and care for Leonard, partly to provide him with the domestic assistance he needed.

Also, there were financial ties between them. Dezie never possessed much of worldly wealth. He had a small weekly salary and little money from other sources. He often recognized that it was

respondent who had made possible the purchase of the house. So their personal and financial relationship made logical the arrangement between them. Furthermore, Dezie would not desire that respondent, a woman then 72 years old, perform services for any definite period of years, but only so long as she was physically able to discharge the burden. This she did for ten years. Her family spirit was further manifested by occasionally helping Dezie with her own money to meet the monthly installments upon the house. One other time she contributed one-half of the purchase price of a family automobile.

None of her contributions, personal, domestic, or financial, have been repaid. In addition to receiving the house, appellant was substituted for respondent as beneficiary in Dezie's insurance policy. Of course, respondent had a home with Dezie during the years that she remained there. But, contrary to appellant's contentions, we do not believe the evidence establishes that the only understanding was that respondent should have a home only so long as she desired to remain there. It appears to us that the trial judge, having the advantage of direct and penetrating appraisal of each witness, properly concluded that respondent had proved her case by the quality of proof required. However, fairness compels us to recognize that the record is not entirely free of doubt and ambiguity. But we believe, as will now be demonstrated, that either the circumstances relied upon are equivocal in meaning and reconcilable with respondent's theory, or they are not of persuasive weight.

Appellant stresses the unlikelihood of a 39-year-old man making an agreement to leave his property at death to a woman 72 years of age. Yet, the record does supply the basis for an inference that Dezie did not regard himself as a healthy man. His utterances to others indicate that he did believe that he would die before respondent. One of the occasions upon which he repeated the understanding between them was in 1932, when he was sick with ulcers and thought he was going to die. So we cannot say

with certainty that the disparity in their ages and life expectancy conclusively refuted the probability that the agreement was made.

Nor do we think that respondent's failure to return to Duluth prior to Dezie's death, although having knowledge of his illness, is necessarily referable either to abandonment of the contract or acknowledgment of a full receipt of its benefit. She intended to return. Evidence of disagreement between respondent and Dezie at the time she went to St. Paul is too vague and indefinite to rebut respondent's claim that she left because of ill health which continued until after Dezie's death.

The incident in Milwaukee where respondent is said to have requested a sister of Dezie to prevail upon him to make a will in favor of Leonard so that appellant would not get the property is a circumstance of some weight. This occurred in 1932, and, if true, it might indicate that there was no agreement with respondent as to the disposition of the property at Dezie's death. However, this conversation was denied by respondent and never made known to Dezie. The trial court was not obliged to accept the affidavit made in support of the motion for new trial that respondent's statement was communicated to Dezie, who refused to comply. Anyway, respondent's affection for Leonard was undoubted, and she may well have temporarily decided to forego her rights as oral promisee in his favor. Aside from its circumstantial weight, it is clear that the statement attributed to respondent could not alter the validity of contractual rights already in existence. Standing alone, Dezie's apparent feeling that he was free to convey the house to appellant is ambiguous. His failure to recognize any obligation to respondent is just as reconcilable with willful disregard therefor as it is with nonexistence thereof and consequently is not a circumstance of particular significance.

The fact that respondent retained the memorandum of the loan of $1,000 by no means conclusively overcomes her positive assertion that she yielded her right to collect that loan as part of the consideration for Dezie's promise. The existence of that loan was adequately established, not only by the memorandum but also by

the testimony of several witnesses. Even Dezie acknowledged its existence when he asserted that respondent was the cause of his ownership of the house. Thus appellant's elaborate argument as to the genuineness of Dezie's signature on the memorandum is unconvincing. At best, it was a fact question upon which the evidence supports the determination of the trial judge.

We think it is clear that the services by respondent as the maternal influence in the Dezie household were so much of personal and family nature that equity cannot say with assurance that their value is estimable with reasonable accuracy. Hanson v. Bowman, 199 Minn. 70, 271 N. W. 127; Colby v. Street, 146 Minn. 290, 178 N. W. 599; Morrow v. Porter, 161 Minn. 396, 202 N. W. 53, and cases cited. The authorities relied upon by appellant are not subject to that classification. Added equity arises from the fact that respondent's right to recover the money which she surrendered in reliance upon the agreement has long since expired. Holland v. Ousbye, 132 Minn. 106, 155 N. W. 1071.

Order affirmed.

