# JACOB MATHESON v. GEORGE C. GULLICKSON AS ADMINISTRATOR *c. t. a.* OF ESTATE OF ANTON SANDSNESS AND OTHERS.[1]

October 25, 1946.

No. 34,259.

[1]Reported in 24 N. W. (2d) 704.

*Christensen & Ronken,* for appellants.
*L. L. Duxbury* and *Larson & Gartner,* for respondent.

MATSON, JUSTICE.

Appeal from an order overruling a demurrer to the amended complaint in an action for specific performance of an oral contract with Anton Sandsness (decedent) in his lifetime. The trial court certified that the question presented is important and doubtful.

The complaint alleges that plaintiff, upon his arrival as an immigrant from Norway in 1915, at the age of 20 years, commenced to work for Anton Sandsness on his farm. This employment con-

tinued until January 1, 1920, when plaintiff decided to return to Norway to get married and there make his future home. Anton and his wife, Hannah, were then 53 and 58 years of age respectively and childless. They had developed a strong affection for plaintiff, and in order to induce him not to return to Norway they entered into an oral contract with him whereby they promised that—

"if he would live and make his home with them as long as they lived and treat them as his father and mother and conduct himself toward them as a dutiful son and permit them to have and enjoy his companionship and affection in their home and personally care for them in sickness and in health and help them with their work and devote himself to and serve them as they might require as long as either of them should live, they, * * * would leave to the plaintiff all of their estates as well as all additions thereto to the times of their death."

It was understood and anticipated that it would be necessary for plaintiff to remain unmarried as long as either of them lived. Plaintiff abandoned his plan to return to Norway and commenced performance as agreed. From that day forward, plaintiff lived continuously with Anton and Hannah as a member of their family, treated them as his father and mother, conducted himself as a dutiful son, permitted them to have and enjoy his companionship and affection in their home, personally cared for them in sickness and in health, and helped them with their work, including housework, the preparation and service of meals, laundry, nursing, and farm work of all kinds. He drove them to church and to other places as they desired, kept them company, otherwise served them according to their wishes, and conferred on them his true affection by deeds and words. With the passage of years the mutual bonds of affection became stronger. At the beginning of the contract, Anton and his wife owned estates worth approximately $10,000. At the time of Anton's death on February 26, 1945, his estate was appraised at $20,000, and that of Mrs. Sandsness amounted to $10,000. After making said contract and in reliance thereon, plaintiff turned over to Anton large sums of money derived from the

sale of his own property and also contributed very substantially by his labors to increasing the estates.

Anton left a last will and testament dated October 30, 1944, now admitted to probate, whereby he bequeathed and devised his entire estate to Hannah, his wife, for life (with the right to use as much of the income and the body of said estate as she might desire), one-half of the remainder thereof upon her death to the child or children of any deceased sister of the testator by right of representation, and the remaining one-half to the brothers and sisters of Hannah, share and share alike, and to the child or children of any deceased brother or sister· by right of representation. Hannah gave her written consent to the foregoing will at the time of its execution. No provision was made for plaintiff, and at no time had he received any compensation or wages for his work and services throughout the years. Since the death of Anton, plaintiff has continued to live in the family home to care for Hannah and has otherwise continued to perform his contractual duties with the same fidelity as before. ·

■ A demurrer admits all well-pleaded allegations of material fact and all legal and factual inferences fairly and reasonably to be drawn therefrom as distinguished from bare conclusions or assertions of law. On general demurrer a pleading is to be construed liberally in support of its sufficiency. Smithers v. Bell, 183 Minn. 608, 237 N. W. 420; 2 Pirsig's Dunnell, Minn. Pleading, §§ 1622 and 1633; 5 Dunnell, Dig. & Supp. §§ 7542 and 7724.

■ The oral contract falls within the statute of frauds and is void (Minn. St. 1945, §§ 513.01 and 513.04[2]) unless removed from its purview by sufficient part performance of a nature entitling plaintiff to specific performance. Minn. St. 1945, § 513.06[3]; 6 Dunnell, Dig. & Supp. § 10207.

Clearly, "one may contract with another to give him his property at his death; and in a proper case, if he fails to do so, an action

[2]See, M. S. A. §§ 513.01 and 513.04, and cf. Mason St. 1927, §§ 8456 and 8459.

[3]See, M. S. A. § 513.06, and cf. Mason St. 1927, § 8461.

in the nature of one for specific performance may be maintained and title to the property be vested in the promisee *or charged with a trust in his favor."* (Italics supplied.) Simonson v. Moseley, 183 Minn. 525, 526, 237 N. W. 413, 414.

See, Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 A. S. R. 490; 5 Dunnell, Dig. & Supp. § 8789a, and 6 *Id.* § 10207, and cases therein cited.

What performance justifies equitable relief is to be determined under the holdings of this court which are summarized in 5 Dunnell, Dig. & Supp. § 8789a, as follows:

"* * * To warrant specific performance of an oral contract to give property by will, the contract must be reasonable and satisfactorily established, and must have been performed to such extent and in such manner that the beneficiary cannot be properly compensated in damages. Assuming a peculiar personal and domestic relation as a member of the family of the promisor, pursuant to the contract, and giving him the society and services incident to such relation, and of a kind and character, the value of which is not measurable in money, is sufficient to justify specific performance; but services not of such peculiar character, and for which reasonable compensation can be made in money, are not sufficient to justify such relief."

And again in 6 Dunnell, Dig. & Supp. § 10207:

"* * * The remedy for a breach of such a contract depends upon the facts of the particular case, and may be either at law for damages or in equity for specific performance, or in presenting a claim to the probate court. * * * If the consideration for the contract is labor and services which may be estimated, and their value liquidated in money, so as reasonably to make the promisee whole, specific performance will not be decreed. But if the consideration for the contract is that the promisee shall assume a peculiar and domestic relation to the promisor, and render him services of such a peculiar character that it is practically impossible to estimate

their value by any pecuniary standard, specific performance will be decreed."[4]

The general principles which govern are well established. Their application, however, is difficult and involves a careful consideration of the total effect of the combination of facts and circumstances peculiar to each case. In doing equity, a common factual denominator for the reconciliation of all cases is out of the question. Similar facts produce and reflect different equitable considerations according to the varied settings in which they are found.

Applying these principles to the instant case, we find many elements of service for which plaintiff might be adequately compensated in damages and which could provide no basis for specific performance. Plaintiff, however, who was a stranger to Sandsness and his wife and under no filial or other obligation to either of them,[5] pursuant to the oral contract, gave up his own personal prospects in life, and throughout the years actually assumed a peculiar personal and domestic relation as an affectionate and loyal son in the Sandsness family. As a member of the household, he gave to this childless couple filial devotion, companionship, society, and services to a degree and in a manner not subject to pecuniary valuation. His services in this respect were of such a peculiar character as to justify relief through specific performance.

■ "Specific enforcement of a contract may be refused if

"(a) the consideration for it is grossly inadequate or its terms are otherwise unfair, or

"(b) its enforcement will cause unreasonable or disproportionate hardship or loss to the defendant or to third persons, or

"(c) it was induced by some sharp practice, misrepresentation, or mistake." Restatement, Contracts, § 367.

Here, plaintiff, by giving his services over a period of approximately 25 years and surrendering his personal prospects during the best years of his life, has indeed provided adequate considera-

[4]See, Annotation, 69 A. L. R. 14.
[5]Cf. Happel v. Happel, 184 Minn. 377, 382, 238 N. W. 783, 785.

tion. The oral contract was obtained by fair and honorable means, and its enforcement will bring justice to the plaintiff without visiting any unreasonable or disproportionate loss or hardship upon any person.

Many decisions have been cited to sustain appellants' contentions. These decisions, though correct in principle, involved different factual combinations and are easily distinguished.[6]

■ The contract was not rendered void by reason of the understanding that it would be necessary for plaintiff to remain unmarried. The implied agreement to remain single was merely incidental to an otherwise valid and reasonable contract for personal services and did not constitute a general restraint upon marriage.

"A bargain not to marry, or to be subject to loss or deprived of profit in case of marriage, or a bargain to hinder or prevent the marriage of another, is illegal, unless the bargain is otherwise reasonable and the restraint is incidental to another lawful purpose of the bargain." Restatement, Contracts, § 581, illustration 5. See, 17 Minn. L. Rev. 660, and cases there cited; 35 Am. Jur., Marriage, § 261; Annotation, 122 A. L. R. 127.

■ Appellants contend that an action for specific performance is premature, in that plaintiff, pursuant to the terms of the contract, in order to become entitled to the property or any interest therein, must continue full performance until the death of the surviving

---

[6]Happel v. Happel, 184 Minn. 377, 238 N. W. 783, involved a performance of only four years, the contract was equally beneficial to the son, and the services were also compensable in damages; Simonson v. Moseley, 183 Minn. 525, 237 N. W. 413, involved inadequate consideration and no peculiar personal or domestic services; Whitman v. Dittman, 154 Minn. 346, 191 N. W. 821, involved inadequate consideration and no peculiar personal or domestic services, and the services were only such as a sister would render to a brother without pay; Olsen v. Dixon, 165 Minn. 124, 205 N. W. 955, involved absence of a peculiar personal or domestic relation; Chapel v. Chapel, 132 Minn. 86, 155 N. W. 1054, involved absence of a peculiar personal relation, together with services of a nature compensable in damages; Stellmacher v. Bruder, 89 Minn. 507, 95 N. W. 324, 99 A. S. R. 609, involved peculiar personal domestic services but they were not rendered pursuant to contract.

promisor, Mrs. Sandsness, and that in the meantime plaintiff is without any remedy to protect himself against a breach of contract. Mr. Sandsness in making a will bequeathing his estate to others repudiated the contract with plaintiff, and in this repudiation Mrs. Sandsness joined by giving her consent to the will. This repudiation became an irrevocable breach upon the death of Mr. Sandsness. Does it follow that the promisee is without any equitable remedy or protection as long as one of the promisors lives? We think not. It is true that specific performance cannot be accorded with respect to any certain items or parcels of property, in that plaintiff's right thereto has not fully accrued and can only accrue with respect to such specific property as may remain unconsumed upon the death of the surviving promisor. What property will constitute the estate to which the plaintiff will eventually become entitled upon full performance can be identified and determined only after the death of Mrs. Sandsness. Van Duyne v. Vreeland, 12 N. J. Eq. 142, 157; Teske v. Dittberner, 63 Neb. 607, 88 N. W. 658. In the meantime, however, plaintiff has such an interest in the property as to entitle him to protection in equity. Chantland v. Sherman, 148 Iowa 352, 125 N. W. 871. Since plaintiff's case is altogether and throughout equitable, the court, having thus obtained jurisdiction, will give plaintiff any relief to which he is entitled. Gupton v. Gupton, 47 Mo. 37.

In the Van Duyne case, where the promisor during his lifetime repudiated his contract to bequeath his estate to the promisee by making a conveyance to a third party of certain land, the court in granting a bill *quia timet* to protect the interests of the promisee said (12 N. J. Eq. 157):

"* * * There can be no such thing as a specific performance in the case. The complainant is not *now* entitled to the enjoyment of the property, nor is it possible to ascertain to what part he will be entitled. He, by the agreement, is only entitled to such part of it as the defendant Vreeland may leave at his death. He may exhaust it all during his lifetime. But the complainant does not ask the court to give him the property. All he asks is that the court

may protect him against the consequences of a fraud upon his rights, which will follow from the acts of the defendant, unless the court interferes for his protection."

In the Chantland case, wherein the promisor during her lifetime repudiated her oral contract to bequeath certain property to the promisee and the promisee brought an action for specific performance, the Iowa supreme court held (148 Iowa 358, 360, 125 N. W. 873, 874):

"Such an agreement may not be specifically enforced until the death of the party agreeing to execute the will. * * * The reason for this is that the will may be made at any time during life. * * * But, upon repudiation of such an agreement by denying its existence or by disposing of the property to be willed, a cause of action may accrue for the enforcement of the agreement through *analogous relief,* rescission, or the recovery of damages. * * *

\* \* \* \* \*

"* * * In the case at bar, defendant not only denied the making of the agreement, but expressed her intention not to leave plaintiff any property derived from the estate of decedent. Having thus repudiated her agreement, plaintiff was not required to incur the risk of being unable to establish the contract after her death nor of the property being put beyond reach. Her interest in the property was such as to entitle her to the protection of the courts. * * * *The situation is somewhat novel, but courts of equity are not bound to give any stereotyped form of relief. They readily adapt the relief to the peculiar facts of the case, and their sole concern is that the decree entered shall effectuate justice.*" (Italics supplied.)

In Teske v. Dittberner, 65 Neb. 167, 91 N. W. 181, 101 A. S. R. 614, the promisors as parents of the promisee had orally agreed, in return for certain services to be performed, that the promisee, subject to certain conditions, should upon their death become the owner of a certain parcel of land. After the death of the mother, the father as surviving promisor repudiated the contract. In an action for specific performance brought by the son, the Nebraska

supreme court, in fastening a trust upon the property in favor of the promisee, said (65 Neb. 170, 91 N. W. 182) :

"It does not seem to be an obstacle to the granting of relief in such cases as this that the testator, if he may properly be so called, who has conveyed away his property in violation of his agreement, is still living. Specific performance, strictly so called, cannot be decreed because the father is still living, and until his death the right of the son to have the title vested in himself will not have accrued. But such a situation has already been considered by the courts, and the difficulty thence arising has been solved to our satisfaction."

In the exercise of its equitable jurisdiction, the court in the instant case, in issuing a decree adapted to the facts as they shall develop upon trial, will find no difficulty in making satisfactory provision for the preservation of plaintiff's rights (if he be successful in proving the allegations of his complaint), with due regard to the full protection of the interests of the surviving promisor. Obviously, the surviving promisor is entitled to full use during her lifetime of the property of Anton Sandsness, both as to the income and as to the body or principal thereof, and no restriction should be placed upon her right to consume or dispose of the property except insofar as a disposition thereof may be a fraud upon her agreement with plaintiff. She is likewise entitled to continued performance by the promisee until her death. Subject to the life estate of Hannah Sandsness, the property of Anton Sandsness may be impressed with a trust in favor of plaintiff as against the executor and the legatees under decedent's last will for the protection and preservation of a remainder interest in fee in said property to plaintiff. Equitable relief by impressing the property with a trust has been accorded in many jurisdictions. Van Dyne v. Vreeland, 11 N. J. Eq. 370; Duvale v. Duvale, 54 N. J. Eq. 581, 35 A. 750; Hayes v. Moffatt, 83 Mont. 214, 271 P. 433; Duvale v. Duvale, 56 N. J. Eq. 375, 39 A. 687, 40 A. 440; Osborn v. Hoyt, 181 Cal. 336, 184 P. 854; Teske v. Dittberner, 65 Neb. 167, 91 N. W. 181, 101 A. S. R. 614; Chantland v. Sherman, 148 Iowa 352, 125

N. W. 871; Gupton v. Gupton, 47 Mo. 37. For excellent note, see 66 A. L. R. 1439.

The order overruling the demurrer is affirmed.

Affirmed.