## JEAN O'BRIEN v. H. Z. DEMEULES AND OTHERS.[1]

May 4, 1951.

No. 35,321.

*A. J. Casey* and *Victor M. Petersen,* for appellant.
*G. W. Townsend* and *R. H. Fryberger,* for respondents.

MAGNEY, JUSTICE.

Defendants demurred to an amended complaint in an action for specific performance of an oral contract to convey or devise real property on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and plaintiff appeals.

The complaint alleges in substance the following facts:

On June 1, 1945, one Henrietta Moreau was 58 years old and plaintiff 45 years old. Henrietta was physically handicapped. She weighed 245 pounds. Her vision was greatly impaired. She could read with difficulty, had trouble recognizing her friends, and was

[1]Reported in 47 N. W. (2d) 772.

unable to make her way about or attend to her business affairs. Her eyes bulged, giving her a peculiar appearance. . She was afflicted with varicose veins, which affected her ability to walk, and this disability was increasing. For a number of years she had been engaged in the secondhand furniture business. Plaintiff was keeping house for her family and the family of her brother, who with his wife was employed. Plaintiff's employed sister lived with her. Plaintiff had many friends and acquaintances in Minneapolis, was socially active in her group, and entertained her friends in the evenings.

Plaintiff had been acquainted with Henrietta for some time prior to June 1945. Henrietta often visited plaintiff's home and was acquainted with her sister. On or about the above date, Henrietta told plaintiff that she had no close friends and that her relatives never came to see her. She said that she had no family of her own, that she had the privilege of picking her own family, and that she desired to pick plaintiff as her family. As her health was becoming gradually worse, she said that she would like to adopt plaintiff; that she wanted plaintiff to live with her, look after her, and take care of her, especially in the evenings. She said that her eyesight had failed her; that she needed and would need more help and assistance at various and irregular times; and that such care and assistance could not be provided by any paid employe or stranger. She said that she would need the assistance, care, and affection which a daughter would furnish her, and she asked plaintiff to take her out for meals and especially to devote herself to her in the evenings. Henrietta stated that if plaintiff would promise to look after her when called upon to do so until her death, she (Henrietta), in return for the peculiar and personal services and obligations which she expected plaintiff to render, would buy plaintiff a home and income property within a designated area in Minneapolis and would deed this house to her when she had acquired it or devise it to her. Plaintiff accepted Henrietta's offer. In accordance with and in performance of the agreement, whenever Henrietta called upon her, plaintiff never spent less than five evenings,

and sometimes every evening, a week with her, acting as her companion, taking her out to meals, remaining with her in her home until very late at night, dutifully devoting herself to her service and care, and continuing to do so until her death. During the time of such service, plaintiff necessarily had to give up the society of her friends, acquaintances, and relatives. Henrietta was exacting in her demands upon plaintiff. Toward the last, she became almost blind, and plaintiff had to read to her and accompany her when crossing streets whenever called upon to do so. The calls and demands upon plaintiff were not confined to the evenings, but to days as well. In all things plaintiff sought to comply with Henrietta's wishes and to keep her satisfied and happy. Plaintiff kept and performed all the terms of the agreement. In all respects, plaintiff acted toward her as a daughter would have done.

In accordance with the agreement, Henrietta did purchase an income-producing property at 2121 Third avenue south in Minneapolis of the value of $8,500. After she had acquired this property, she told plaintiff that this was the property she would either convey to plaintiff or leave to her at her death. Plaintiff believed, during the time she was rendering the services, that Henrietta would convey the property to her or would make a will in her favor. On two occasions, Henrietta sought the services of persons to make her will, and in those instances she intended to leave the property to plaintiff. Prior to the death of Henrietta and at her request, plaintiff went into possession of the property and remained in possession thereof until evicted by defendant administrator. At the time of her death, Henrietta left an estate in excess of $100,000.

The complaint further states that Henrietta failed to perform her part of the agreement, in that she failed and neglected to convey to plaintiff the home she had purchased in her lifetime and failed to devise same to plaintiff; that plaintiff received no compensation for her services, which were of such a purely personal nature that they could not adequately be measured in money; and that by reason thereof plaintiff has no adequate remedy at law.

Defendant administrator, shortly before the commencement of this action, sold the property above mentioned to defendant Mathilda Schaust, who knew of plaintiff's rights.

Plaintiff asks judgment of the court declaring her to be the owner of the property in question, or, if she cannot be restored to ownership, that the proceeds of the sale of the property be impressed with a trust in her favor and that she have judgment for $8,500 with interest.

The court sustained defendants' demurrer to the complaint.

Assuming the truth of all well-pleaded allegations of material facts in the complaint, we have here an action for specific performance of an oral contract either to convey or devise a parcel of real property to plaintiff in consideration of certain personal services rendered to the decedent promisor.

Since the case of Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 A. S. R. 490, this court has had frequent occasions to discuss the principles on which specific performance of oral land contracts may be decreed when the consideration is alleged personal services. These principles are set forth in detail in Matheson v. Gullickson, 222 Minn. 369, 24 N. W. (2d) 704, with citation of the earlier cases. The governing principles were again set forth in Goette v. Howe, 232 Minn. 168, 172, 44 N. W. (2d) 734, 737, as follows:

"* * * specific performance of an oral contract to devise land will be granted where the promisee, pursuant to such contract, has assumed a peculiarly personal and domestic relation as a member of the family of the promisor and has given to him the society and services incident to such relation and of a kind and character, the value of which is not measurable in money. It is otherwise where the services are not of such peculiar character and which can be reasonably compensated for in money."

To this statement of the requirements, we need add the usual equitable requirements that the terms of the contract be clearly established (Kins v. Ginzky, 135 Minn. 327, 160 N. W. 868; McCarty v.

Nelson, 233 Minn. 362, 47 N. W. [2d] 595), and that the consideration therefor be not grossly inadequate or its terms otherwise unfair. Matheson v. Gullickson, 222 Minn. 369, 24 N. W. (2d) 704; Restatement, Contracts, § 367.

There is no dispute as to the principles. The difficulty arises in applying them to the particular facts involved here. As stated in the Matheson case (222 Minn. 374, 24 N. W. [2d] 707):

"* * * Their application, * * * is difficult and involves a careful consideration of the total effect of the combination of facts and circumstances peculiar to each case. In doing equity, a common factual denominator for the reconciliation of all cases is out of the question."

In applying the above principles to the instant case, the first question which arises is whether the complaint alleges a contract sufficiently definite and certain in all its terms to justify the court in decreeing its specific performance. Defendants contend, and the trial court stated in its memorandum, that the complaint—

"is too indefinite and uncertain in its terms and material allegations as to * * * when performance was entered into * * * and what the actual terms and conditions of the contract were supposed to be."

The complaint here is not a model of good pleading. It is indefinite and uncertain in several respects, especially where it pleads performance on the part of plaintiff. No motion was made to make it more definite and certain, and such defect cannot be reached by demurrer. However, when one considers the allegation covering the agreement between the parties, it does sufficiently allege an agreement by plaintiff to look after and care for decedent for the rest of her life and to render peculiar and personal services when called upon to do so. Cf. Seitz v. Sitze, 215 Minn. 452, 10 N. W. (2d) 426. In consideration for these services, the complaint alleges that decedent agreed to deed or devise to plaintiff a home and income property. It further alleges that a specific piece of property was subsequently purchased by decedent and designated

by her as the property to be deeded or devised to plaintiff as consideration for her services. At the time of making such a contract, it is in almost every instance impossible to do more than approximate the extent and character of the services to be rendered. Granting that the terms of the contract relating to plaintiff's performance were somewhat indefinite, she has now made it definite by actual performance. Giving the facts pleaded, expressly or inferentially, the benefit of all reasonable intendments (see Smith v. Smith, 204 Minn. 255, 283 N. W. 239), we think that the contract alleged was sufficiently definite to be specifically enforced if all requirements for specific performance were otherwise satisfied.

Defendants contend that the allegations of the complaint indicate that plaintiff did not perform any peculiar domestic or personal services for decedent which could not be adequately measured by pecuniary standards. Here, as in the Matheson case (222 Minn. 374, 24 N. W. [2d] 707), "we find many elements of service for which plaintiff might be adequately compensated in damages and which could provide no basis for specific performance." However, here, as in the Matheson case, it appears from the allegations that, although plaintiff was a stranger to decedent and under no filial or other obligation to her, she gave decedent filial devotion, companionship, and affectionate care. She took time from her own household and family duties, gave up the companionship and society of her friends and acquaintances, devoted herself to the care of decedent, and acted in all respects as a daughter would have done. The fact that decedent did not hire plaintiff on a wage or salary basis indicates that she wanted more than the mere routine service of a hired companion or nurse. Decedent is alleged to have said "That she would need the care and assistance and affection that a daughter would furnish her." It is fair to assume that the care and affection of plaintiff was what decedent wanted and what she received during the final years of her life. This inference is further strengthened by the allegation that "decedent told plaintiff that she had no close friends, nor relatives, that her relatives never came to see her, and that she had no family of her own." It also

appears from the amended complaint that decedent was a lonely woman, peculiar in appearance and habits, exacting in her demands on plaintiff, and suffering from many bodily infirmities which made it necessary for her to have close care and attention. In Happel v. Happel, 184 Minn. 377, 381, 238 N. W. 783, 784, we said in a dictum that the rule permitting specific performance of oral contracts to devise land—

"is generally applied in cases where a person incapacitated by old age, physical ills, or infirmities requires special care and companionship."

Taking the allegations of the amended complaint as a whole, we think that plaintiff has sufficiently alleged the performance of services for which no adequate pecuniary measurement exists. Earlier cases of this general nature which have denied the remedy sought here were sufficiently distinguished in Matheson v. Gullickson, 222 Minn. 369, 375, note 6, 24 N. W. (2d) 704, 708, note 3. Whether plaintiff is in fact entitled to the relief sought here we cannot decide. We only hold that she is entitled to such relief if she can prove the allegations of her amended complaint. Admittedly, the question here involved is a close one, but, giving the facts pleaded the benefit of all reasonable intendments, in our opinion the demurrer should have been overruled.

Order reversed.