ANNA SHERMAN CHANTLAND, Appellant, v. CARRIE SHERMAN, Appellee.

**Specific performance:** AGREEMENT TO DEVISE: SUFFICIENCY OF EVIDENCE. In this action to enforce an agreement to will property to plaintiff, or to cancel conveyances made to defendant in consideration of such an agreement, the evidence is reviewed and held sufficient to establish the agreement.

**Same:** PERFORMANCE BY ONE PARTY: STATUTE OF FRAUDS. Where the devisee of a remainder conveys his interest in the property to the life tenant, in consideration of an agreement by the life tenant to will the property to him, together with an interest in the life tenant's own property, the statute of frauds is not an obstacle to an enforcement of the agreement, because of performance of the contract by the remainderman.

**Conveyances:** CONSIDERATION. Where a conveyance recites a consideration of $1 and love and affection, extrinsic evidence is admissible to prove an additional consideration.

**Wills:** AGREEMENT TO DEVISE: CONSIDERATION. Where a will gives to the widow simply control over the property during her life, a conveyance to her by the remainderman of his interest therein will constitute a sufficient consideration for an agreement by the widow to devise a portion of the property to such remainderman.

**Same:** BREACH OF AGREEMENT: RELIEF. While an agreement to devise property can not be specifically enforced during the life of the promisor, yet upon repudiation of the agreement or disposition of the property to be willed a cause of action may accrue, and its enforcement for analogous relief by way of rescission or the recovery of damages may be had.

*Appeal from Cherokee District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, APRIL 9, 1910.

ACTION to enforce an alleged oral agreement to execute a will or to cancel certain conveyances because procured by fraud resulted, on hearing, in the dismissal of the petition. Plaintiff appeals. *Reversed* and *remanded.*

*Herrick & Herrick* and *Augustus Graham,* for appellant.

*Molyneux & Maher,* for appellee.

LADD, J.—Plaintiff is the only child of J. A. Sherman, a physician of Cherokee, who died testate October 10, 1899. The defendant was the second wife of deceased, having been married to him January 1, 1889, and was childless. She had been married previously and had an adopted daughter, Mae Williams, who died, after she had married, leaving a son. The will of deceased directed: (1) The payment of the debts and funeral expenses; (2) bequeathed his personal property to his wife "for her use and benefit during her lifetime, giving to my said wife full control over said property;" (3) devised all his real estate to his wife, "together with the hereditaments and appurtenances thereto belonging or in any wise appertaining to have and to hold to my wife, Carrie Sherman, during her lifetime with full power to control the same during her lifetime as though this was an absolute bequest;" (4) recited that he had set aside a life insurance policy of $1,000 to his daughter, Anna Sherman, to be used in the completion of her education; and (5) directed that "all of my property, both real and personal, of whatever kind or character or nature, that remain at the time of the death of my wife, Carrie Sherman, be equally divided between my daughter, Anna Sherman, and my stepdaughter, Mae Williams, share and share alike." It nominated the

widow as executrix and recommended that she be allowed to qualify without bond. Within two weeks after Sherman's death, Anna Sherman and Mae Williams executed to the widow, defendant therein, a bill of sale transferring to her all their interest in the personal property of deceased and a deed conveying to her all their interest in the real estate left by him. The petition, in the first division alleges that these conveyances were executed in pursuance of an oral agreement between the grantors and grantee therein, by the terms of which, as consideration thereof, defendant undertook to will to each of them the property, which each so transferred and one-half of her own property; that, though defendant often had promised performance on her part, she utterly refused to execute a will as agreed on February 23, 1907, repudiated her promise so to do, and threatened to make other disposition of the property. In the second division of the petition, an agreement and repudiation thereof as stated above was alleged, and, in addition thereto, a secret intention not to perform the same, and that, because of the situation and relation of the parties, the conveyances were procured by fraud, and, as alternative relief, the cancellation of the bill of sale and deed was prayed. The answer admitted the execution of these instruments, denied that this was in pursuance of any agreement, or that they were procured by fraud, averred title under the will, averred that the property was set apart to her by the court upon final settlement of the estate of which plaintiff had notice, alleged that the cause of action contained in the first division of the petition had not accrued, and that as the cause pleaded in the second division was not set up until the trial began, plaintiff had elected to rely on the cause contained in the first division, and prayed to go hence with her costs.

I. The doctor died October 10, 1899, and on the 21st of that month the bill of sale, and two days later the deed, was executed. The will was admitted to probate

on the date last mentioned, and on the same day defendant

I. SPECIFIC
PERFORMANCE:
agreement
to devise:
sufficiency of
evidence.
qualified as executrix and the inventory was
filed. Plaintiff was then under twenty years
of age and Mae Williams about three years
older. Both were members of defendant's
household and neither had had any business experience or
knew the extent or nature of the estate left by deceased.
Save an absence of a year at the State Normal School,
plaintiff had resided with her father and defendant since
their marriage, as also had Mae Williams, when not away
at school. The attitude of both toward the defendant was
that of a child to a mother, and undoubtedly she exercised
over them the influence mothers usually do over grown
daughters. Plaintiff testified that an attorney of her ac-
quaintance for many years and in whom she reposed entire
confidence came to the house on the 21st of October, 1899,
and that defendant called her and Mae Williams into the
room where he was and explained that the attorney had
advised her the will was drawn in such a way that she
would have to keep an account of all money expended
during her life; that this would involve much work; that
deceased had always thought a great deal of Mae and had
often expressed a desire that she share alike with plaintiff
in the property and proposed, if plaintiff and Mae would
convey to her all their interest in the estate, this would
relieve her from keeping an account, and she would, when
she died, divide the property equally between them, as that
was the idea of deceased and she wanted to carry it out
in her will; that plaintiff had not talked with the attorney
before, though he assured her in defendant's hearing that
he would see that such will was made, to which defendant
added that she would make the will as soon as she got
to it; that, in response thereto, plaintiff and Mae expressed
their willingness and, in reliance on what was said, exe-
cuted the bill of sale, which the attorney then drew from
his pocket and afterwards the deed. The attorney loaned

defendant a dollar to be paid each of the girls upon the execution of each instrument, and she handed the same to them; the attorney explaining that this was done to render the instrument binding. The witness testified of two subsequent conversations with defendant in which the latter expressed her purpose to make the will as soon as she could get to it. Plaintiff's husband testified that he called on defendant February 23, 1907, and, after suggesting that upon her death plaintiff would inherit nothing, said to her that he thought she ought to make her will as agreed, to which she replied that she would not make the will; that he asked if she had not promised to and she responded: "When I said that, I did not mean I was going to give Anna my property, because I have too many relatives of my own to do that."

On the other hand, the defendant testified that on meeting the attorney on the street he had inquired how she was coming on, to which she replied that bills were coming in faster than funds to meet them, and asked if there was any way out of this; that he remarked that there was just one way, and that was for the girls to sign to her; that she said Mae would do as she wished, but she did not know about plaintiff; that the attorney replied that he would talk with them; and that the next she knew he brought the papers to the house and they signed them; that she made no explanation or promise to them; that the attorney merely asked if they were ready to sign, and, responding that they were, they signed the bill of sale and deed; that she was surprised at it being done so quickly and had no part therein save as stated; and that the matter of willing the property was not mentioned. On cross-examination, in answer to an inquiry as to whether the witness ever told plaintiff she would make a will in her favor she responded: "No, not exactly; but I have always thought I might." Being reminded that the inquiry was for what she said, not thought, she again answered: "No,

I don't think I ever did." To another question, she answered that she did not think she said anything to plaintiff's husband about making the will, and later that she did not remember anything about it. Concerning a conversation had subsequent to the beginning of the suit, she was asked: "Is that the time you said, if you said anything about a will you meant her father's property, and not your property? A. I never once thought of my own property in any connection with it. Q. Was that the time you were having this conversation that this was said? A. Yes, it was at that time. Is that what you want?" Later she denied that anything of the kind was said. She testified, further, that she had always thought that some time she would make a will, and carry out what deceased had provided in his will—that is, divide the property between the girls—but that she had changed her mind and did not intend plaintiff should have any of it.

Such is the record before us—the testimony of plaintiff simple, direct and natural; that of defendant evasive and unreasonable, and, if true, discreditable alike to herself and attorney. The stepdaughter, without some inducement or representation, would not have been likely voluntarily to part with all the property she had. No reputable lawyer would be a party to the procurement without consideration from a girl under twenty years of age, without business experience, bereaved by the recent death of her father, of the bounty he had bestowed upon her—all she had. No woman, actuated by proper motives, standing *in loco parentis,* would allow her stepdaughter thus to divest herself of all the property to which she was entitled under the will even though this might enable her to appropriate it to her own use. We prefer a finding consistent with fair dealing on the part of the attorney whom death has silenced, and with an honest purpose on the part of the defendant, especially when supported by convincing evidence. From a separate examination of the record, we have become

satisfied that the defendant's thought that she would some time will the property so it would be equally divided between her adopted daughter and stepdaughter after her death had its origin in the promise she had made as alleged, and that, in pursuance of such promise, the conveyances were executed.

II.  The plaintiff and Mae Williams having fully performed, the statute of frauds interposes no obstacle to the enforcement of the agreement to will the property.  *Allbright v. Hannah*, 103 Iowa, 98; *Bird v. Jacobus*, 113 Iowa, 194; *Mueller v. Batcheler*, 131 Iowa, 650.

*2. SAME: performance by one party: statute of frauds.*

The deed and bill of sale recited the consideration as one dollar with love and affection.  Appellee contends that extrinsic evidence was not admissible to prove the additional consideration as alleged.  That the rule is otherwise sufficiently appears from *Lawton v. Buckingham*, 15 Iowa, 22; *Puttman v. Haltey*, 24 Iowa, 425; *Trayer v. Reeder*, 45 Iowa, 272; *Bossingham v. Syck*, 118 Iowa, 192; *Allen v. Rees*, 136 Iowa, 423.

*3. CONVEYANCES: consideration.*

III.  Though under the respective clauses of the will the widow was entitled to exercise full control over the real and personal property, title thereto did not pass to her.  *Hoefliger v. Hoefliger*, 132 Iowa, 575.  And for this reason the execution of the conveyances constituted ample consideration for the agreement to make the will.

*4. WILL: agreement to devise: consideration.*

Such an agreement may not be specifically enforced until the death of the party agreeing to execute the will. *Johnson v. Hubbell*, 10 N. J. Eq. 332 (66 Am. Dec. 773); *Bolman v. Overall*, 80 Ala. 451 (2 South. 624, 60 Am. Rep. 107.)  The reason for this is that the will may be made at any time during life.  *Manning v. Pippen*, 86 Ala. 357 (5 South. 572, 11 Am. St. Rep. 46; 25 Ency. 1075.)  But, upon

*5. SAME: breach of agreement: relief.*

repudiation of such an agreement by denying its existence or by disposing of the property to be willed, a cause of action may accrue for the enforcement of the agreement through analogous relief, rescission, or the recovery of damages. Otherwise, performance might be defeated by rendering this impossible by the disposition of the property or through inability to prove the contract after the death of the promisor.

In *Carmichael v. Carmichael*, 72 Mich. 76 (40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528), a conveyance to a third person was set aside and a decree directed to be entered such as would prevent the party promising to make the will from violating the agreement. In *Duvale v. Duvale*, 54 N. J. Eq. 581 (35 Atl. 750), a wife, who, on ample consideration, had promised to execute a will of certain property to her husband, repudiated the agreement, and in a suit to protect the husband's rights the vice chancellor said: "While it is true that a promise to make a certain will is not broken until the death of the promisor, and it is true that actions in which such promises have been enforced have been in cases occurring after the death of the promisor, yet I do not see why the court can not, upon the principle of *quia timet*, fix upon the property a liability to answer the promise, in any case where the promisor has, during life, repudiated its terms, and attempted to make other disposition of the property. This Mrs. Duvale has done, and now, by her answer, claims the absolute right to do. Chancellor Williamson recognized the right of the promisee to protection upon the principle of *quia timet* in the case of *Vanduyne v. Vreeland, supra,* (12 N. J. Eq. 142). Vreeland and wife had adopted a child under a promise that all the property they had should at his death go to the child. Before his death, Vreeland sold the property for the purpose of cutting out the right of the adopted child to a purchaser who had notice of such rights. Al-

though the complainant in that case, under the agreement, had no right to the property until the death of Vreeland, yet the chancellor decreed that the purchaser held the property subject to the agreement between Vreeland and his adopted son, and that upon the death of Vreeland, and after the accounting, the purchaser should convey the property to the complainant. I will advise a decree that the defendant holds her title to the property in suit subject to the trust mentioned, as well as subject to her agreement to make a will for it in favor of the complainant; also, that she be enjoined, while the complainant is living, from making a will devising the property to any person other than the complainant; and that, in the event of her dying during the life of her husband, her heirs at law shall at once execute a conveyance of the said property to the complainant." On appeal to the Court of Errors and Appeals, the principle was affirmed; the modification being in a matter of detail. *Duvale v. Duvale,* 56 N. J. Eq. 375 (39 Atl. 687, 40 Atl. 440.)

Contracts which contemplate the conveyance of estates in remainder or the devise thereof have frequently been enforced by the courts, upon the denial of such obligation. Thus, in *Reilly v. Reilly,* 135 Iowa, 440, two boys were induced to live with and work for the owner of forty acres of land on the promise that they should have the farm after the owner's death, and, upon denial of all obligation to perform and performance by the boys, they were held entitled to a decree conveying the forty acres subject to the homestead rights of the owners. In the case at bar, defendant not only denied the making of the agreement, but expressed her intention not to leave plaintiff any property derived from the estate of decedent. Having thus repudiated her agreement, plaintiff was not required to incur the risk of being unable to establish the contract after her death nor of the property being put beyond reach. Her interest in the property was such as

to entitle her to the protection of the courts.     See *Buzick v. Buzick,* 44 Iowa, 259.     The situation is somewhat novel, but courts of equity are not bound to give any stereotyped form of relief.·     They·readily adapt the relief to the peculiar facts of the case, and their sole concern is that the decree entered shall effectuate justice.     *Campbell v. Moorchouse,* 141 Iowa, 568; *Creveling v. Banta,* 138 Iowa, 47; *King v. Ordway,* 73 Iowa, 735; *Hale v. Kobbert,* 109 Iowa, 128.     Had defendant carried out the agreement, the plaintiff, if living, or. her heirs, if she died before defendant, would take the undivided one-half of the estate deceased left.     Section 3281, Code.     So that a conveyance of the undivided one-half of the real estate left by deceased subject to the use and control of defendant during life will .save to each party the interest to which each would be entitled were the agreement executed.     As the trial court dismissed the petition, no finding was made as to whether the personal property exceeded the debts and other charges against the same.     The cause is remanded for the entry of decree requiring such a conveyance of the realty and the determination of such excess, if any, of personalty, and declaring defendant's right to the use and control of one-half thereof during life, and that upon her death plaintiff shall be entitled to the same.     See *Scott v. Scott,* 137 Iowa, 239.

*Reversed* and *remanded.*