MORTEN v. ZEVALKINK.

1. SPECIFIC PERFORMANCE—MONEY DECREE—ACTION FOR DAMAGES.
   While under a proper bill for specific performance of a contract,
   equity may require a money award where the bill states, and
   the proofs show, solely, if anything, an action at law wherein
   defendant would have right to a trial by jury of the issue
   of fact, equity may not award damages for breach of contract
   as in an action at law.

2. SAME—DISMISSAL OF BILL WITHOUT PREJUDICE TO ACTION FOR
   DAMAGES.
   In suit by adopted stepdaughter against her stepfather who had
   made her his legal heir when she was 32 years of age, mar-
   ried and the mother of two children, for specific performance
   of contract, entered into after her mother's death and her
   own divorce, under which he agreed to support her, educate
   her sons, never remarry, leave property to her and retain
   plaintiff as beneficiary in policies of life insurance in return
   for her services as housekeeper during his remaining years,
   as a result of which she gave up a home in another State,
   sold furniture at a sacrifice and transferred certain shares
   of stock to him, bill is dismissed without prejudice to right
   of plaintiff to bring an action at law for damages, if any,
   for breach of contract, since the bill and proofs presented
   issues triable only at law where defendant could have a jury
   trial.

3. SAME—INCIDENTAL RELIEF—DISMISSAL WITHOUT PREJUDICE.
   Where bill for specific performance of contract by one defend-
   ant and for incidental relief against various alleged trans-
   ferees of his property is dismissed for failure to state a cause
   for equitable relief, without prejudice to action at law, relief

Necessity for mutuality of remedy in specific performance cases,
see 2 Restatement, Contracts, § 372.

Discretionary character of remedy of specific performance, see 2
Restatement, Contracts, § 359.

Specific performance of oral contracts for sale of land partly per-
formed, see 2 Restatement, Contracts, § 358, comment e.

Illegality of contract in restraint of marriage, see 2 Restatement,
Contracts, § 581.

An erroneous but valid judgment is not subject to collateral at-
tack either in State rendered or other States, although open to di-
rect attack by further proceedings in original action or by inde-
pendent proceedings in equity, see Restatement, Judgments, § 11,
comment b.

A personal judgment is void if rendered by court not having ju-
risdiction over defendant, see Restatement, Judgments, § 14.

against such transferees must await judgment in the action at law and under a judgment creditors' bill.

Per BOYLES, C. J., and CHANDLER, WIEST, and BUTZEL, JJ. pp. 585–593.

4. APPEAL AND ERROR—CHANCERY CASE REVIEWED DE NOVO.

On appeal in suit wherein plaintiff sought relief by way of specific performance, injunction and cancellation, case is heard *de novo*.

5. SPECIFIC PERFORMANCE—ORAL CONTRACT—PART PERFORMANCE.

Specific performance of stepfather's oral contract to pay adopted stepdaughter pursuant to contract for housekeeping services and leave insurance and property to her will not be decreed where her performance lasted but four months before he remarried and prevented her from continuing her performance.

6. SAME—PARTIAL PERFORMANCE—STATUTE OF FRAUDS.

In suit for specific performance of an oral contract for conveyance of land, acts of part performance by plaintiffs, permitted by defendant as though accepting the void contract as valid, must be sufficient to create such strong equities in plaintiff's favor that courts of equity should not permit the statute of frauds to be used as an instrument of fraud (3 Comp. Laws 1929, § 13413).

7. SAME—MUTUALITY OF REMEDY.

Since there can be no mutuality of remedy in the nature of specific performance of oral contract to leave property in return for housekeeping service of plaintiff rendered defendant stepfather, breached by latter subsequent to his remarriage some four months after plaintiff had commenced performance, such relief may not be decreed.

8. SAME—IMPOSSIBILITY OF PERFORMANCE.

Specific performance will be denied where the facts are such that specific performance prayed is impossible.

9. FRAUDS, STATUTE OF—PART PERFORMANCE—SPECIFIC PERFORMANCE.

An oral contract whereby defendant was to leave property to his adopted stepdaughter whom he had made his legal heir in return for her services as housekeeper during his remaining years was void under the statute of frauds where there had not been sufficient part performance to grant relief of specific performance sought by daughter (3 Comp. Laws 1929, § 13413).

10. CONTRACTS—PUBLIC POLICY—MARRIAGE.

An agreement on the part of a widower not to remarry, made with his adopted stepdaughter incident to contract for housekeeping services, is against public policy.

11. SAME—MARRIAGE.

Generally contracts not to marry are void.

12. SPECIFIC PERFORMANCE—ORAL CONTRACT—PART PERFORMANCE—INCIDENTAL RELIEF.

Bill for specific performance of alleged oral contract by defendant who had adopted plaintiff, his stepdaughter, and made her his heir, to support her, educate her sons and leave all his property to her in return for her performance of housekeeping services, should have been dismissed where her part performance was of but four months' duration before his remarriage and his prevention of her further performance did not entitle her to relief either by way of specific performance against defendant stepfather or incidental relief of injunction or cancellation against alleged transferees of his property.

13. CONTRACTS—BREACH OF WRITTEN AGREEMENT TO PAY MONEY—REMEDY.

Remedy for breach of written contract whereunder defendant stepfather who had adopted plaintiff and made her his heir agreed to pay her a given sum monthly when it became necessary for her to leave his home where she had theretofore served as housekeeper under an oral contract was in an action at law, with right to jury trial.

14. EQUITY—ADEQUATE REMEDY AT LAW.

Where plaintiff's bill of complaint and proofs fail to establish a right to equitable relief but do entitle her to pursue remedy at law, her bill is dismissed without prejudice to her right to obtain such relief in such action as she can establish there.

Per BOYLES, C. J., and CHANDLER, NORTH, and BUTZEL, JJ., pp. 593–595.

BUSHNELL and SHARPE, JJ., dissenting.

ON APPLICATION FOR REHEARING.

15. TRIAL—TRANSFER OF CAUSES—PLEADINGS.

Showing made subsequent to reversal of decree for plaintiff in suit for specific performance against plaintiff's stepfather impels Supreme Court to grant request for transfer of case to law side of court as to stepfather and pleadings there are required to conform to those in an action at law.

Appeal from Kent; Brown (William B.), J. Submitted October 16, 1942. (Docket No. 33, Calendar No. 42,105.) Decided April 6, 1943. Rehearing denied June 10, 1943.

Bill by Josephine A. Morten against Barend Zevalkink and others for specific performance of an oral contract or, in the alternative, for money damages, and for other relief. Decree for plaintiff. Defendants appeal. Reversed and transferred to law side of court.

*Starr, McLaughlin & Starr* (*Allaben & Wiarda,* of counsel, on application for rehearing), for plaintiff.

*Uhl, Bryant, Snow & Slawson* and *Irving H. Smith,* for defendants.

SHARPE, J. (*dissenting*). On August 21, 1939, plaintiff filed a bill of complaint for specific performance of an oral contract.

The following facts are not in dispute. Plaintiff was legally adopted by defendant Barend Zevalkink as his daughter in October, 1928, when she was about 32 years of age. She first became acquainted with Mr. Zevalkink when she was about 9 years old. When plaintiff was about 17 years of age, her mother married Barend Zevalkink. Following the marriage, plaintiff went to live with her mother and stepfather at their home in Grand Rapids.

In December, 1921, plaintiff married Spencer W. Morten and made her home in or about St. Louis, Missouri, from the time of her marriage until the death of her mother in the fall of 1938. As a result of the marriage, two sons were born to plaintiff, Spencer W. Morten, born October 24, 1922, and Robert Morten, born September 16, 1924. On April 9, 1937, plaintiff was divorced from her husband. She was awarded custody of her two sons and $85 per month for their support.

Prior to November, 1938, plaintiff owned a home in Clayton, Missouri, a suburb of St. Louis, in which

she lived for approximately 12 years. This house was encumbered by two real-estate mortgages aggregating the sum of $12,600. Following her divorce, plaintiff rented the house and lived in St. Louis.

On April 1, 1938, plaintiff entered into the employ of the Wage Earners Health Association, a co-operative medical group, as membership secretary at a salary of $100 per month and worked through the month of June. In the early fall of 1938, she returned to work for the same employer, but the method of paying her salary was changed. Under the new arrangements she received a salary of $35 per month and certain commissions.

Plaintiff's mother died November 21, 1938, and Barend Zevalkink called plaintiff soon after it happened. Plaintiff arrived in Grand Rapids on the following day and stayed at defendant's home until after the funeral. Within a few days after the death of Mrs. Zevalkink, plaintiff and defendant entered into an arrangement whereby plaintiff and her two sons were to live in defendant's home.

Plaintiff returned to St. Louis to get her clothing and to terminate her employment with the health association on November 27, 1938. Shortly thereafter, she returned to Grand Rapids; and about January 1, 1939, plaintiff and her two sons together with defendant left for St. Louis where they were to get plaintiff's furniture. Defendant sent a truck and two men to St. Louis for this purpose. Plaintiff sold some of her furniture in St. Louis and the balance of it was brought to Grand Rapids. About this time plaintiff and her former husband entered into an arrangement and the divorce decree was amended permitting the boys to live with plaintiff in Michigan and reducing the alimony from $85 to $40 per month. Following her return to Grand Rapids, plaintiff and her sons made their home at defend-

ant's residence where plaintiff acted in the capacity of housekeeper for her two sons and defendant. She received no salary for these services.

On April 7, 1939, defendant Barend Zevalkink, who had been in Detroit for a few days, returned and informed plaintiff that he was going to·marry one Annie Buford. On April 11, 1939, defendant was married to Annie Buford, but prior to the marriage plaintiff and defendant discussed what arrangements were to be made concerning plaintiff and her two sons. It was agreed that plaintiff and her sons were to live separate from defendant and his new wife. The following agreement was executed:

"This agreement, made this 13th day of April, A. D. 1939, between Barend Zevalkink, 1555 Pontiac road, in the city of Grand Rapids, Kent county, Michigan, party of the first part, and Josephine Audrain Morten, of the same place, party of the second part, witnesseth:

"Whereas, the said party of the second part has heretofore performed certain services of great value to said party of the first part,

"And whereas, the parties hereto are father and daughter,

"And whereas, said party of the second part now holds herself ready to perform such services for and on behalf of said party of the first part when and if requested so to do,

"Now, therefore, in consideration for said services heretofore performed by said second party and her readiness to perform such service in the future when requested so to do by said party of the first part, it is agreed, that said first party shall pay the sum of $60 to said second party on the first day of each and every month hereafter while this contract shall continue in force."

On May 1, 1939, plaintiff moved to a new location and on this date defendant paid her $50 in pursu-

ance of the above agreement. This sum was the only money paid by defendant under the agreement. On or about May 25, 1939, plaintiff received the following letter:

"Dear Madam:

"Barend Zevalkink has taken up with me in detail the matter of a certain written document which he executed on the 13th day of April, 1939, wherein he agreed to pay you $15 each and every week thereafter.

"He complains that this document is unjust, unfair and in fact illegal, and that there is no reason, legal or otherwise, why he should abide by the terms of it.

"Otherwise stated, he believes that he should not pay any part of the amounts contemplated in this paper.

"As his attorney, therefore, I am writing you this letter for the purpose of definitely stating, that Mr. Zevalkink disclaims any and all liability by virtue of any facts that gave rise to it, and to further inform you that he will not pay any of the sums, or any part of them contemplated, or appearing to be contemplated, by this alleged written agreement.

"Kindly accept this as Mr. Zevalkink's final and definite determination in this matter.

"Yours very truly,
"(Signed) Irving H. Smith."

On August 21, 1939, plaintiff began the present suit. She claims that she and defendant made a verbal agreement during the week following the death of her mother in November, 1938; and that the written agreement hereinbefore referred to merely modified the previous verbal agreement.

Plaintiff claims that she and defendant verbally agreed that if she would give up her home in St. Louis, Missouri, come and live with defendant and make a home for him during the remainder of his natural life, he would never remarry, that he would

provide a home for plaintiff and her two sons, that he would pay for the education of the two sons, that he would never revoke his will which provided that upon his death plaintiff and her two sons would become the beneficiaries of all his property both real and personal, that he would make payable to plaintiff certain policies of life insurance amounting to the sum of $50,000 and keep in force other policies of insurance on his life amounting to $13,000 in which plaintiff was named as beneficiary.

Plaintiff further claims that as a result of this agreement, she terminated her employment in St. Louis where she had prospects of making $150 per month; that she sold some of her furniture at a loss of $1,265.25; that because of a mortgage foreclosure on her home in St. Louis, which defendant promised to redeem, she lost the sum of $4,400; that she assigned to defendant 10 shares of capital stock of the Columbian Storage & Transfer Company of the par value of $100 per share which stock was a part of her mother's estate; and that she consented to a reduction in her alimony from $85 to $40 per month.

Defendant admits the execution of the written agreement hereinbefore referred to, but insists that it was to be effective only until plaintiff got a job or remarried. Defendant denies the existence of an oral contract as claimed by plaintiff, but admits that he agreed to pay plaintiff $40 per week to maintain his home and that plaintiff could have certain charge accounts.

The trial court filed an opinion in which he made the following statements:

"Also, the claims made by plaintiff are corroborated and borne out in many important points by the admissions of defendant, and by the indisputable fact that from December 15, 1938, to May 1, 1939, the parties mutually lived up to the details of the agreement as claimed here by plaintiff. * * *

"At defendant's home in November, 1938, when plaintiff was at her mother's funeral, defendant proposed to her that she should give up her job in St. Louis and come and take her mother's place in looking after and caring for and managing his home, thereby making a home for her and the boys and for him. Upon his urging and promises made by him to her it was agreed by and between them that she would accept his proposition to come and take charge of his home, give up her employment and her home in St. Louis, and dispose of some of her furniture as he directed. Thereupon on December 1st, she returned to St. Louis and resigned her employment and arranged in regard to her home there, returning to his home December 15, 1938, where she began her duties under her agreement with defendant and remained until May 1, 1939. * * *

"The matter of salary or pay for services as such, was never mentioned between plaintiff and defendant in their agreement or while she was at his home. She was performing service for him as he requested for the remainder of his life, when she would be the recipient of his estate and life insurance, thus showing the permanent extent and character of the agreement between them. * * *

"There is no doubt as to the purpose of Exhibit 9 (written agreement of April 13, 1939) which was made to supplement the original agreement between the parties so as to provide for the living and comfort of plaintiff in a house she would select instead of remaining at defendant's home. In fact, Exhibit 9 definitely acknowledges that plaintiff has been in his service and 'has performed certain services of great value' for him, and that they are 'father and daughter,' and that 'She is ready now to continue such services,' and he agrees to pay to her the sum of $60 each month 'hereafter' while this contract shall remain in force.

"It is obvious Exhibit 9 was then intended to provide for maintenance of plaintiff at defendant's expense outside of his home, and there is no testimony

of any other change in the original agreement between plaintiff and defendant. * * *

"The fact that plaintiff assigned over to defendant a certificate of stock in the Columbian Storage & Transfer Company for 10 shares of the par value of $1,000, without consideration other than defendant's promise to her, as made in her original agreement with him and her reliance thereon in making this assignment, is cogent evidence of the good faith of her claims as here made.

"The fact that there are no circumstances which tend to militate against the probability of plaintiff's claims or which tend to support the denial made by defendant of plaintiff's claims, supports plaintiff's claims here made. * * *

"The testimony in the case offered by plaintiff, supported by conditions and circumstances which establish its probability without any doubt, shows that plaintiff's claims are justly made, and that she is entitled to recover for such items of damage as have been established."

A decree was entered which stated that:

"Plaintiff satisfactorily performed all acts which she was obligated to perform in connection with the performance of both of the above-mentioned agreements insofar as she was permitted to do so by defendant Barend Zevalkink, and that plaintiff is still ready, willing and able to continue the performance of all such acts, and it further appearing that defendant Barend Zevalkink has breached and violated the terms and provisions of both of said contracts contrary to the rights of the plaintiff * * * and that the plaintiff has been materially damaged thereby, and that plaintiff is entitled to relief prayed for in her bill of complaint."

The decree provided that in lieu of a decree for specific performance, plaintiff recover the sum of $3,000 for the loss of the equity in her former home in St. Louis; the sum of $1,200 for losses sustained

in the sale and disposal of her furniture; the sum of $7,484.16 representing the present worth of a $13,000 life insurance policy; the sum of $7,749.17 representing the present worth of the written contract to plaintiff; the sum of $885 representing the present cash value of the shares of Columbian Storage & Transfer Company stock; the sum of $8,635.57 representing the present worth of a house and lot which has a present cash value of $15,000. The decree also provided that all transfers of property to Annie Buford Zevalkink or the other defendants are set aside and declared null and void.

Defendants appeal and contend that plaintiff failed to establish an oral contract as claimed in her bill of complaint for specific performance by clear, convincing or persuasive evidence; that the contract alleged by plaintiff shows no mutuality of obligation or remedy; that the contract if established is void under the statute of frauds; that the contract if established could be rescinded by either party; that said contract if established and held valid would entitle plaintiff to only the actual value of any service she had rendered over and above what she had already received; and that when plaintiff entered into the written contract of April 13, 1939, and later moved out of defendant's home, she terminated any and all prior arrangements claimed to have been made with defendant.

In our opinion the question of the establishment of the oral contract is a disputed question of fact. It would not serve any useful purpose to relate in detail the evidence for and against the existence of such a contract.

The trial court found as a fact:

"Upon his urging and promises made by him to her it was agreed by and between them that she would accept his proposition to come and take charge

of his home, give up her employment and her home in St. Louis, and dispose of some of her furniture as he directed.''

We hear chancery appeals *de novo* and are not unmindful of the advantage possessed by the trial judge before whom the witnesses appear in person. We have read the record carefully and concur in the finding of the trial court that an oral contract was entered into. .

Defendant urges that the oral contract being contrary to the statute of frauds (3 Comp. Laws 1929, § 13413 [Stat. Ann. § 26.908]) was void. We are not in accord with this broad statement. It is the law in this State that the statute of frauds is not applicable to an executed verbal agreement. See *Salsbury v. Sackrider,* 284 Mich. 493; *Mayes v. Central Trust Co.,* 284 Mich. 504; *Van Camp v. Van Camp,* 291 Mich. 688; *Kendzierski v. Kendzierski,* 293 Mich. 701; and *Guzorck v. Williams,* 300 Mich. 633.

Defendants also urge that there is no mutuality of obligation or remedy in the oral contract. The doctrine of mutuality applies only to executory contracts. It does not apply to executed contracts. Plaintiff urges that there was such a substantial performance of the contract as to take it out of the doctrine of mutuality; and that the contract must be considered as an executed contract as plaintiff fully performed the contract until she was precluded from further performance by the action of her father.

In *Duncan v. Duncan,* 288 Mich. 306, 309, we said:

''For many years our court has adhered to the rule that a court of equity has the power to compel the specific performance of a parol contract to convey land which contract has been fully performed on the part of the vendee.''

It is also the rule that performance of an oral contract need not cover a period as long as that contemplated by the parties to the contract.

In *Denevan* v. *Belter,* 232 Mich. 664, we held (syllabus):

"Where plaintiffs fulfilled every obligation under their oral contract, such part performance was sufficient to take the case out of the statute of frauds, although because of the death of the other party, their services were required for only a few weeks."

It is further urged by defendants that the written agreement of April 13, 1939, terminated and supplanted the oral agreement and that if plaintiff is entitled to any damages it is by virtue of the written agreement which can only be recovered in a law action. The trial court held that such written agreement merely supplemented the verbal agreement so as to provide for the living and comfort of plaintiff in a house she would select instead of remaining at defendant's home. We have examined the record carefully and fail to find any competent evidence indicating that the written agreement supplanted the oral agreement.

Plaintiff urges that the chancery court has authority to award a money judgment in lieu of a decree for specific performance.

In the case of *Van Camp* v. *Van Camp,* cited above, the plaintiff asked for specific performance of a partly performed oral contract to convey a farm or for money relief. The court said (p. 695):

"Defendants also urge that a money judgment should not have been rendered. In the case at bar, plaintiff's bill of complaint prayed for specific performance of the oral agreement or the alternate remedy of a lien upon the property for such damages as might be found due. It is a well-established rule that a court of equity is the proper forum to enforce the kind of oral contract plaintiff alleged in his bill of complaint. *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528); and

66 A. L. R. 1439, and a court of equity, having right-fully assumed jurisdiction, may grant appropriate relief. In the case at bar, the trial judge concluded that a money judgment was the most satisfactory manner of settling the affairs of the litigants. We are in accord with the determination of the trial court.

"In *Chantland* v. *Sherman,* 148 Iowa, 352 (125 N. W. 871), the court said:

" 'The situation is somewhat novel, but courts of equity are not bound to give any stereotyped form of relief. They readily adapt the relief to the peculiar facts of the case, and their sole concern is that the decree entered shall effectuate justice.'

"Defendants next urge that plaintiff was not entitled to a lien upon the premises. It appears that in 1937 defendant Frances Van Camp conveyed the premises to her three children, defendants herein, the only consideration for such conveyance being love and affection. Moreover, she attempted to evict plaintiff. Under such circumstances the chancery court did not exceed its powers in fastening a lien upon the premises to secure plaintiff's claim and to prevent defendant Frances Van Camp from committing a fraud upon plaintiff."

We have repeatedly held that the specific enforcement of an oral contract is not a matter of strict legal right, it rests in the sound discretion of the court. In our opinion the facts and circumstances in this case justify a decree for specific performance. The decree of the trial court should be affirmed, with costs to plaintiff.

BUSHNELL, J., concurred with SHARPE, J.

WIEST, J. In this opinion the defendant referred to is Barend Zevalkink.

I am of opinion the bill should be dismissed without prejudice to the right of plaintiff to bring an ac-

tion at law to recover damages, if any, for breach of contract.

The bill and the proofs presented issues triable only at law and not in equity and the trial court could not award damages for breach of contract as in an action at law. See *Reith* v. *University Housing Corp.*, 247 Mich. 104. There may be instances where, under a proper bill for specific performance of a contract, equity may require a money award, but this can never be the case when the bill states, and the proofs show, solely, if anything, an action at law wherein defendant would have right to a trial, by jury, of the issues of fact. At the time the bill was filed plaintiff was about 43 years of age, had been married and divorced, and had two sons, 14 and 16 years of age. Defendant Barend Zevalkink was formerly her stepfather and by court proceedings in Missouri, October 10, 1928, under petition of her mother and stepfather, was decreed to be their child, but retained the name of Josephine Audrain Morten. By deed of adoption, executed in Missouri, November 30, 1928, defendant adopted plaintiff, then 32 years old, "as and for his child and heir as fully as he is by law empowered to do," and agreed "to support, maintain and bestow upon" plaintiff "the care and treatment due from a parent to a child."

At the age of 25 plaintiff was married and went to live with her husband in St. Louis, Missouri. Plaintiff's mother died in November, 1938. Plaintiff attended the funeral and remained at the home for about a week. During that period she claims defendant requested her to give up her home in St. Louis, and come, with her two sons, and live with him. She claims he agreed and represented that if plaintiff would come to live with him, make a home for him and care for him during his remaining days he would never remarry but would support, maintain, take care of and provide a home for plaintiff

and her two sons throughout plaintiff's full life-time, in such a manner that plaintiff and her two sons would never want for anything; pay for the education of plaintiff's two sons, including a college education; never revoke or alter his will previously executed, which her father then informed plaintiff provided for the devise and bequest of all of his property, both real and personal, to plaintiff and her two sons; make payable to plaintiff certain existing policies of life insurance amounting to $50,000, in order to protect and provide for plaintiff and her two sons, and that sufficient funds would be available for the inheritance tax on his estate at the time of his death; keep in force certain other policies of insurance on his life, amounting to $13,000, which policies her father informed plaintiff were then in force and payable to plaintiff, and that he would never make a change of beneficiaries in connection with said policies; that she then thought her father was the owner of property, real and personal, of the value of upward of $200,000, and still has that belief; that she informed her father she accepted his proposition.

Plaintiff had an equity in some real estate in Missouri, subject to two mortgages, one of which was under foreclosure, and defendant promised to finance the same for her; that in order to comply with his request to live in his home she had to dispose of some of her household furniture at a sacrifice. Defendant moved a truckload of plaintiff's furniture from Missouri to Grand Rapids, and plaintiff and her sons went there to live.

In April, 1939, defendant remarried and when, after a short honeymoon, he brought his wife to his home the new wife was dissatisfied with the presence of plaintiff and her two sons in the home. Plaintiff and defendant talked matters over and went to an attorney, had a writing prepared, Ex-

hibit 9, which they signed, under which defendant agreed to pay plaintiff $60 on the first day of each and every month thereafter while the contract continued in force. Plaintiff established another home, together with her sons, and defendant paid $50 under the contract and then notified plaintiff he would not pay any more. Plaintiff then filed the bill herein to have specific performance of the contract she alleges and also damages for his breach of the contract. Plaintiff also claims that defendant agreed to pay the balance due on her automobile, and also an automobile belonging to one of her sons, and 'he did not do so.

The circuit judge entered in favor of plaintiff a "decree and judgment," and gave her relief on the judgment against all defendants as though under a judgment creditors' bill. The court found a valid verbal contract was made and that the written agreement modified the oral agreement only to the extent that it stipulated and provided the exact sum which defendant was required to pay plaintiff each month thereafter in connection with support and maintenance.

We now quote from the decree:

"Therefore, in lieu of a decree for specific performance and on motion of James A. Starr, one of the attorneys for plaintiff,

"It is ordered, adjudged and decreed that the plaintiff recover the sum of $3,000 from defendant Barend Zevalkink and a personal decree and judgment is hereby rendered in favor of plaintiff and against defendant Barend Zevalkink for such sum representing the damages which plaintiff has sustained by virtue of the loss of the equity in her former home located in St. Louis, Missouri.

"It is ordered, adjudged and decreed that the plaintiff recover the further sum of $1,200 from defendant Barend Zevalkink and a personal decree and

judgment is hereby rendered in favor of plaintiff and against Defendant Barend Zevalkink for such further sum representing the damage which plaintiff has sustained in disposing of certain articles of her household furniture, effects and personal property at defendant's direction when plaintiff moved to the home of defendant. * * *

"It is further ordered, adjudged and decreed that the plaintiff recover the further sum of $7,484.16 from defendant Barend Zevalkink and a personal decree and judgment is hereby rendered in favor of plaintiff and against defendant Barend Zevalkink for such further sum, representing the present worth of $13,000 in face amount of life insurance upon the life of the defendant Barend Zevalkink due 14.74 years hence, which period constitutes the life expectancy of defendant Barend Zevalkink.

"It is further ordered, adjudged and decreed that the plaintiff recover the further sum of $7,749.17 from defendant Barend Zevalkink and a personal decree and judgment is hereby rendered in favor of the plaintiff and against defendant Barend Zevalkink for such further sum, representing the present worth of the sums which plaintiff would have received from such defendant under the terms of the written contract between them dated April 13, 1939, Exhibit 9, had such defendant fulfilled his obligations under such written contract during the period of his life expectancy, less the sum of $50 actually paid to plaintiff by him on or about May 1, 1939, in connection with such written contract.

"It is further ordered, adjudged and decreed that the plaintiff recover the further sum of $885 from defendant Barend Zevalkink and a personal decree and judgment is hereby rendered in favor of plaintiff and against defendant Barend Zevalkink for such further sum which is hereby determined to be the present cash value of the 10 shares of stock of The Columbian Storage & Transfer Company which were transferred and assigned to defendant Barend Zevalkink by plaintiff on or about April 13, 1939, as

a part of the consideration for the execution of Exhibit 9 by such defendant.

"It is further ordered, adjudged and decreed that the plaintiff recover the further sum of $8,635.57 from defendant Barend Zevalkink and a personal decree and judgment is hereby rendered in favor of plaintiff and against defendant Barend Zevalkink for such further sum, representing the present worth of the sum of $15,000 due 14.74 years hence, which period constitutes the life expectancy of defendant Barend Zevalkink and, which sum of $15,000 is hereby determined to be the present cash value of the house and lot of defendant Barend Zevalkink located at 1555 Pontiac Road, S. E., in the city of Grand Rapids, Michigan.

"It is further ordered, adjudged and decreed that all conveyances, transfers, assignments or gifts of real or personal property made by defendant Barend Zevalkink to defendant Annie Buford Zevalkink or to any of the other defendants herein are hereby set aside and declared null and void and without force and effect, and that said defendant Annie Buford Zevalkink and each of the other said defendants who may have received any of the property of defendant Barend Zevalkink shall forthwith reconvey, retransfer, reassign and redeliver to defendant Barend Zevalkink all of such property, both real and personal, and that in default of their so doing and in lieu thereof, and with the same force and effect, the plaintiff may cause certified copies of this decree to be recorded in the office of the register of deeds for Kent county, Michigan, and for any other counties in which any of such property may be located.

"It is further ordered, adjudged and decreed that to secure payment to her of the several sums of money herein decreed and awarded to her together with interest thereon and the costs of the plaintiff herein to be taxed plaintiff shall have and she is hereby given a lien upon all property, both real and personal, owned by defendant Barend Zevalkink

and also upon all property, both real and personal, which has been heretofore transferred, assigned or conveyed by defendant Barend Zevalkink to defendant Annie Buford Zevalkink or to the joint names of defendants Barend Zevalkink and Annie Buford Zevalkink or to any other defendant herein since November 30, 1938, on or about which date plaintiff and defendant Barend Zevalkink made and entered into the verbal contract mentioned above and that such lien shall continue and remain in full force and effect until said defendant Barend Zevalkink shall have paid all of said several sums to the plaintiff.

"It is further ordered, adjudged and decreed that all sums of money herein awarded to plaintiff and all judgments and decrees herein rendered in favor of plaintiff shall bear interest at the rate of five per cent. per annum from the date hereof until the same shall have been fully paid, and that plaintiff may have execution forthwith for the enforcement and collection of all such moneys and interest thereon, and that until all such sums and interest thereon shall have been fully paid, the defendant Barend Zevalkink is hereby restrained and enjoined from conveying, selling, assigning, giving away, incumbering, devising, bequeathing, or otherwise disposing of or concealing his property, both real and personal, or any part thereof, and from withdrawing from any bank or other depository any moneys, credits or other assets which may be there deposited to his credit or in his name or in which he may have any legal or equitable interest or over which he may have control, and also from withdrawing from any safety deposit box or boxes or other depositories any moneys, stocks, bonds, securities or other assets which he may own or in which he may have any legal or equitable interest or over which he may have control.

"It is further ordered, adjudged and decreed that until all sums due and owing to plaintiff from defendant Barend Zevalkink under the terms and pro-

visions of this decree have been fully paid the defendants, Annie Buford Zevalkink, John Zevalkink, The Columbian Storage & Transfer Company, Michigan Messengers, Inc., and all of the officers, agents, employees and representatives of said two corporations and all of the agents, employees and representatives of Annie Buford Zevalkink, John Zevalkink, and Barend Zevalkink are hereby restrained from conveying, selling, assigning, giving away, incumbering, or otherwise disposing of or concealing any property, money, effects, accounts, stocks, bonds, or other assets in which defendant Barend Zevalkink has any interest, and from withdrawing from any bank or banks any money or moneys which may be there deposited to the credit of defendant Barend Zevalkink or in which he may have any legal or equitable interest, and from withdrawing from any safety deposit boxes or other depositories any money, stocks, bonds, securities, or other assets which defendant Barend Zevalkink may own or in which he may have any legal or equitable interest, and from confederating and conspiring with defendant Barend Zevalkink, and from aiding and assisting him in conveying, selling, assigning, giving away, incumbering, or otherwise disposing of or concealing any property, money, effects, accounts, stocks, bonds, or other assets which defendant Barend Zevalkink may own or in which he may have any interest.

"It is further ordered, adjudged and decreed that until all sums due and owing to plaintiff from defendant Barend Zevalkink under the terms and provisions of this decree have been fully paid that defendant Annie Buford Zevalkink is hereby restrained from conveying, selling, assigning, giving away, incumbering, or otherwise disposing of or concealing any property, real or personal, which defendant Barend Zevalkink has heretofore conveyed, assigned or transferred to her.

"It is further ordered, adjudged and decreed that defendant Barend Zevalkink pay to the plaintiff all

costs which she has incurred and which may here-after be taxed in this cause and that plaintiff shall have execution therefor.''

As said at the start of this opinion, the allegations in the bill, the proofs at the hearing and the decree all relate to an alleged breach of contract, wholly without equity jurisdiction. The so-termed decree is a series of judgments, recoverable, if at all, only in an action at law. Mr. Zevalkink was married to his present wife April 11, 1939. Plaintiff with her two sons went to defendant's home to live on or about December 15, 1938, and left there under the written agreement of April 13, 1939, Exhibit 9, to make her home elsewhere. She was, therefore, at defendant's home about four months.

I cannot join in the precedent my Brother's opinion would establish.

Relief, if any, against the defendants other than Barend Zevalkink must await judgment in the action at law and under a judgment creditors' bill.

BOYLES, C. J., and CHANDLER and BUTZEL, JJ., concurred with WIEST, J.

NORTH, J. The main relief sought by plaintiff's bill of complaint in the instant case is specific performance, although incidentally she seeks injunctive relief and relief by way of cancellation. On this appeal by defendants we hear the case *de novo.* Upon such consideration I am in accord with the conclusion of Mr. Justice WIEST that the bill of complaint should be dismissed without prejudice to plaintiff's right to institute an action at law.

In the opinions of Justices WIEST and SHARPE the factual background of the case appears; and the record as a whole sustains the following conclusions of fact and law. The original contract upon which plaintiff relies was an oral contract. There is no

claim that this oral contract was fully performed by either party, nor do the facts justify a holding that it was partially performed by plaintiff to such an extent as to justify an equity court in decreeing performance by defendant Barend Zevalkink. It is true that in some cases specific performance of somewhat similar contracts has been decreed where, as in the instant case, full performance was prevented by one of the parties and there had been substantial performance by the other party. *Guzorek* v. *Williams*, 300 Mich. 633. But in the instant case there has not been anything like such a degree of performance by plaintiff as would justify a court in decreeing specific performance by defendant Barend Zevalkink.

"In proceedings for the specific performance of an oral contract for the conveyance of land, the acts of part performance by plaintiffs, permitted by defendant as though accepting the void contract as valid, must be to an extent and of a kind to create such strong equities in plaintiffs' favor that courts of equity should not permit the statute of frauds to be used as an instrument of fraud." *Harrison* v. *Eassom* (syllabus), 208 Mich. 685.

Under the facts in this case there can be no mutuality of remedy in the nature of specific performance (*Harmon* v. *Muirhead*, 247 Mich. 614); and admittedly conditions have come about which render specific performance quite impossible. See *Buck* v. *Smith*, 29 Mich. 166 (18 Am. Rep. 84).

Insofar as the oral contract upon which plaintiff relies involves an alleged interest in real estate, it is void under the circumstances of this case. 3 Comp. Laws 1929, § 13413 (Stat. Ann. § 26.908); *Sutton* v. *Rowley*, 44 Mich. 112; *Jenkins* v. *Jenkins' Estate*, 241 Mich. 39. While perhaps not of material importance, it may also be noted that Barend Ze-

valkink's alleged agreement with plaintiff not to remarry is contrary to public policy and generally such agreements are void. 35 Am. Jur. p. 354.

So far as the oral contract is concerned, it follows that plaintiff is not entitled to specific performance; nor, under the circumstances, would she be entitled to incidental relief in the way of injunction or cancellation. Under the alleged oral contract no issue was presented in consequence of which the equity court could take jurisdiction or grant any relief; and therefore as to the alleged oral contract the suit in equity should have been dismissed.

Insofar as the written contract is concerned, plaintiff's sole remedy accruing from the alleged breach of such contract is in an action at law, wherein defendant would have a right to trial by jury. It follows that under this record neither phase of plaintiff's cause of action gave the equity court jurisdiction; and a decree should have been entered dismissing the bill of complaint. A decree dismissing the bill will be entered in this court without prejudice to plaintiff's right to obtain such relief, if any, as she can establish she is entitled to be adjudged in a proceeding on the law side of the court. Appellants will have costs of both courts.

BOYLES, C. J., and CHANDLER and BUTZEL, JJ., concurred with NORTH, J.

STARR, J., did not sit.

### ON APPLICATION FOR REHEARING.

PER CURIAM. In this case we dismissed the bill of complaint without prejudice to plaintiff's right to obtain relief, if any, in a proceeding on the law side of the court. Plaintiff's subsequent request for transfer of the case to the law side of the court, upon showing made, is now granted as to defendant Barend Zevalkink and the pleadings there are to

conform to those in an action, at law. Rehearing denied.

Boyles, C. J., and Chandler, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred. Starr, J., did not sit.